**UNITED STATES of America, Plaintiff,**

v.

**SEABOARD SURETY COMPANY and the Home Insurance Company, Defendant and Third-Party Plaintiffs,**

v.

**JOSEPH MORTON CO., INC., Joseph J. Battaglia and the Perkins & Will Partnership, Third-Party Defendants.**

No. CV 82–0518.

United States District Court, E.D. New York.

Nov. 25, 1985.

Raymond J. Dearie, U.S. Atty. by Thomas Roberts, Asst. U.S. Atty., Brooklyn, N.Y., for plaintiff.

Hart & Hume, New York City, for defendants/third party plaintiffs.

Bernstein, Weiss, Copland, Weinstein & Lake by Norman Copland, New York City, for third party defendants Perkins & Will.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

### I.

In September 1976 Joseph Morton Company (Morton), then headed by Joseph Battaglia, was awarded a building contract by the United States government to construct additions to the Plum Island Animal Disease Center on Long Island, New York. Seaboard Surety Company and The Home Insurance Company (the Sureties) issued the performance bond. During the ensuing three years hundreds of modifications were ordered. In March 1979 Morton by letter declared the United States in breach of contract. The United States immediately notified Morton that it was terminated for default, specifically for non-performance. The United States then looked to the Sureties for completion of the project. The Sureties refused to either complete the project or pay the performance bond.

In March 1980 Morton filed for Chapter 11 Reorganization under the Bankruptcy Code. Pursuant to 11 U.S.C. § 302(c)(2)(B), all persons were stayed from filing any action against Morton without the leave of the Bankruptcy Court during pendency of the bankruptcy action. In March 1982 Morton filed suit in the United States Claim Court seeking to have the termination for default converted into a termination for convenience. Termination for convenience would allow Morton to recover costs plus some profit on the work performed before termination. Unfortunately, in 1980 the United States charged Morton with fraud and conspiracy to commit fraud in connection with Change Order No. 2 of the Plum Island contract. The company was convicted of submitting false and fraudulent cost statements in violation of 18 U.S.C. §§ 2, 371, 1001, and 3237 in April 1981.[1]

In response to Morton's 1982 suit in the Claims Court for a ruling of termination for convenience, the United States asked for summary judgment sustaining the default termination. In July 1983 the Claims Court issued a decision. Neatly avoiding the issue of non-performance, the Claims Court upheld the termination for default based on the post-termination charge and conviction of fraud. The Claims Court declared that even though the United States did not know of the fraudulent cost statements in March 1979 and did not terminate the contract for that reason, the fraud had been committed before termination and could have been, had it been discovered, a basis for default termination. Accordingly, since fraud could have been the ground for default termination, the Claims Court sustained the default termination of the entire

---

**1.** *United States v. Joseph Morton Co.,* No. CR 80–00413 (E.D.N.Y. April 24, 1981), *aff'd* Nos. 81–1174/1233 (2d Cir. Jan. 11, 1982).

contract without deciding the non-performance issue. *Joseph Morton Co. v. United States*, 3 Cl.Ct. 120, 122 (1983). On appeal the United States Court of Appeals for the Federal Circuit affirmed the Claims Court, holding that newly-discovered grounds can support a prior termination for default. *Joseph Morton Co. v. United States*, 757 F.2d 1273, 1277–79 (Fed.Cir.1985).

In 1982, at the same time Morton commenced its suit in the Claims Court, the United States commenced the instant action against the Sureties under the Miller Act. 40 U.S.C. §§ 270a.–d. The simultaneous suits were filed by agreement. Moreover, it appears that the Sureties were acting for Morton in the Claims Court, that is, they paid the lawyer and generally directed the litigation. In any event, in April 1983 the United States Bankruptcy Court dismissed Morton's Chapter 11 proceeding. Morton was not discharged and the automatic stay was lifted. At this point, the United States sought to enter counterclaims for breach of contract against Morton in the Claims Court action.

Morton opposed adding the counterclaims on the basis of the recently enacted § 6(a) of the Contract Disputes Act of 1978 (CDA), 41 U.S.C. § 605(a). Under the CDA "[a]ll claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer." There was some question as to whether § 6(a) of the CDA applied to Morton, as its contract pre-dated the Act, and might or might not be grandfathered in under the footnote to § 16, 41 U.S.C. § 601. Despite a First Circuit Court of Appeals opinion holding that a decision by a contracting officer was not necessary in a similar case, *Woods Hole Oceanographic Institution v. United States*, 677 F.2d 149 (1st Cir.1982), the Claims Court held that under §§ 6(a) and 16 of the CDA, Morton could choose to invoke the requirements of the Act. If Morton so chose there must be a decision from a contracting officer before the government could file and pursue its counterclaims in the Claims Court action. Morton opted to proceed under the CDA. The government appealed and the Federal

Circuit affirmed the Claims Court, holding that the CDA does apply and the contracting officer's decision is a jurisdictional prerequisite to the government's claims against Morton. *Joseph Morton Co. v. United States*, 757 F.2d 1273 (Fed.Cir. 1985).

Plaintiff United States now moves for partial summary judgment in its favor, Rule 56(b), Fed.R.Civ.P., holding that the Claims Court decision sustaining termination for default works collateral estoppel on the issue of the Sureties' liability. The government argues that as it is now settled that Morton defaulted on the contract, the Sureties' liability on the bond is established and only damage issues remain for trial. The Sureties oppose partial summary judgment, maintaining that they are not collaterally estopped by the Claims Court judgment from contesting liability. The Sureties also move for dismissal of this action on the ground that under the CDA a decision by a contracting officer is a jurisdictional prerequisite to commencing and maintaining this suit, and that the Court of Claims then has exclusive jurisdiction. 41 U.S.C. §§ 605, 609. The government counters that the CDA is applicable to contractors but not their Sureties. In addition, the Sureties move for summary judgment in their favor holding that under the circumstances it was impossible for Morton to perform the construction contract or that changes in the contract during the course of construction amounted to breach or recession releasing Morton from performance. The various motions were submitted in two sets of motions some months apart. In the interest of efficiency the Court chooses to address and decide them in one opinion.

## II.

◼ The Court first addresses the issue of collateral estoppel. Collateral estoppel is a more limited and narrow application of its sister doctrine, *res judicata*. Both serve the goals of judicial finality, legal certitude, and judicial economy. *E.g.,*

*Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). The doctrine of *res judicata* holds that once a case has been litigated to judgment it should not be the subject of repeated suits. Rather, the first judgment disposes of any subsequent suits involving the same factual events and legal issues among the same parties or their privities. Of course, application of *res judicata* frequently raises questions of identity, privity, and what issues and claims were the subject of final judgment.

■ Collateral estoppel is a narrower application of *res judicata.* Where a second lawsuit between the same parties, or those who stand in their place, involves a different cause of action, the judgment in the first action estops relitigation of only those matters that were litigated and the subject of a final determination or verdict. *Id.* at 598, 68 S.Ct. at 719. In other words, the effect of the prior judgment is limited to specific issues in the second action and does not dispose of the entire suit.

In the instant case, the government asks that this Court apply the judgment of the Claims Court upholding contract termination for default to dispose of the liability issue between the government and the Sureties. More accurately, the government asks that Morton's criminal conviction for fraud operate as an estoppel on the issue of the Sureties' liability on the performance bond.

It is not disputed that there is sufficient identity of interest between the parties on each side of the two cases. Neither party here seriously disputes that there was sufficient opportunity to litigate the questions of fraud and termination in the earlier action. What is in question is what the earlier judgment decided and the effect it should have here.

■ The Court will not indulge in long discussion. The application the government advocates is overly broad. Collateral estoppel requires a narrow application. The judgment in the criminal case was that Morton had committed fraud in certain cost and payment statements submitted to the government. The judgment in the Claims Court case was that Morton defaulted on the contract by committing that fraud. Neither judgment addresses the issues of contract performance. Whether Morton performed construction of the Plum Island addition as it should have, whether the architect's construction plans were faulty, and other performance issues have not yet been litigated or decided by any court. These contract performance issues are the essence of the government's claims and the Sureties' defenses. As the Sureties point out, they issued a performance bond, not a fidelity bond. They were liable for failure to properly build the facility addition, not for fraudulent Change Orders.

■ Accordingly, the judgment of the district court that tried the criminal case and the judgment of the Claims Court, which was affirmed by the Federal Circuit, operates as collateral estoppel on the issues of the specific fraudulent acts committed by Morton, and its agents, and the default termination for those fraudulent acts. The Court concludes that as neither judgment had any bearing on the contract performance issues, they cannot be the basis for holding the Sureties liable on the performance bond. Plaintiff's motion for partial summary judgment, therefore, is denied.

### III.

The Court next addresses the more difficult issue of application of the CDA to the case at bar. 41 U.S.C. §§ 601 to 613. Specifically, the Sureties contend that as this suit involves the question of performance of a contract with the government, at the non-government party's option it must first be the subject of a contracting officer's decision, and in any event, can only be heard by the Claims Court. Defendant Sureties ask for dismissal on this ground. The government maintains that only a contractor can assert these defenses, not its surety. Moreover, plaintiff contends the CDA is not applicable to this action.

The issue appears to be one of first impression. While the parties contest at

some length the law regarding when a surety can assert defenses or claims of a contractor, the Court is convinced that this is not the correct analysis. Rather, the dispositive question is whether the CDA applies to actions between the government and sureties.

The CDA is silent as to its application to sureties and the Miller Act, 40 U.S.C. § 2709a.–d. The Miller Act requires that a contractor for a public building secure a payment and a performance bond in conformance with the statute. The government here sues the Sureties on the performance bond pursuant to the Miller Act. The CDA goes no further than declaring that its provisions apply to disputes involving contracts to which the United States is a party and where the contract is for, among other things, "the procurement of construction ... [on] real property." 41 U.S.C. § 602(a)(3). Throughout its provisions the statute speaks of disputes between contractors and the government. A "contractor" is defined as "a party to a Government contract other than the Government." 41 U.S.C. § 601(4). The question is, then, does the CDA by its intent or definition apply to actions involving sureties.

The Court is unwilling to construe the terms of the CDA beyond the plain meaning of its words. A contractor is a party to a government contract, and this a surety is not. Obviously, a surety has an interest in the contract, but unless the contractor defaults, the surety is not directly involved. This construction is supported by a reading of the legislative history. Among the declared purposes of the CDA is the equalization of the bargaining power of the parties and the assurance of fair and equitable treatment of contractors. S.Rep. No. 95–1118, 95th Cong., 2d Sess. 1, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5235. The legislation addressed particular concern not only that the resolution of contract disputes should be uniform throughout the government with greater opportunity for negotiated settlement, but that small contractors should not be at an economic disadvantage and their right to due process should be safeguarded. *Id.* at 4, *reprinted in* 1978 U.S.Code Cong. & Ad.News at 5238.

The legislative history, however, does not speak directly to the Miller Act or the CDA's application to sureties. Rather, its primary concern is clearly contractors' claims. Nevertheless, the legislative history and the statute do directly address the CDA's affect on a number of other statutes. 41 U.S.C. §§ 602(b–c), 603, and 609(a); S.Rep. No. 95–1118 at 33–35, *reprinted in* 1978 U.S.Code Cong. & Ad. News at 5267–69. Faced with this silence on the subject of the Miller Act and sureties amid discussion and provision for effects on other areas of the law, the Court concludes that Congress did not contemplate or intend application of the CDA to include the Miller Act and suits between sureties and the government. Where Congress has set out to create a coherent system, the Court will infer that what Congress did not include it meant to exclude. In other words, the Court refuses to construe the CDA so broadly as to include what Congress gives not the slightest suggestion it intended to include. Accordingly, the Court holds that the CDA is not applicable to the government's action against the Sureties under the Miller Act.

Nor is the Court particularly enlightened by the parties' discussion of subrogation. While discussing an earlier motion by the third-party defendant Perkins & Will Partnership for dismissal of the action against them, the Court noted that it doubted that the Sureties are subrogated to the rights of the contractor, but more likely are subrogated to the rights of the government. Slip op. at 8 (E.D.N.Y. September 10, 1985). A brief perusal of the issue of surety subrogation under the Miller Act has not convinced the Court that the result under that statute is any different.

Furthermore, the Court is not convinced that a contracting officer's decision would make any difference in the course of this litigation, save to delay it. The government undertook detailed review of the

Plum Island construction immediately after the default and Sureties' refusal to complete the project. Based on the parties' litigation preparation, the Court sees no likelihood that a decision by a contracting officer will finally resolve the case or that proceedings before the officer will result in a negotiated settlement. Proceedings in this action have already extended over a three-year period without any indication that the matter can be ended short of trial. Nor does the Court find any indication that Congress intended to remove actions under the Miller Act from the jurisdiction of the district courts.

## IV.

Lastly, it appears that the Sureties are asking for summary judgment in their favor holding that performance of the construction contract was impossible and that the numerous change orders included or amounted to a "cardinal change" in the contract. These are clearly disputed issues of material fact requiring trial, and summary judgment must be denied.

## V.

The Court determines that the earlier decisions by the district court and the Claims Court on the issues of Morton's fraudulent Change Orders and termination for default based on fraud operate to collaterally estop litigation of those limited issues before this Court. All other motions by the plaintiff and defendant Sureties are denied.

SO ORDERED.