FRANCES L. JOHNSON *v.* NATIONAL BISCUIT COMPANY.

*William H. Sleeper* and *Wayne J. Mullavey* (*Mr. Mullavey*, orally), for the plaintiff.

*Hughes & Burns* and *Donald R. Bryant* (*Mr. Bryant*, orally), for the defendant.

BLANDIN, J. The questions before us are, first, should the plaintiff's action be dismissed on the ground that she has accepted payments of workmen's compensation, second, if her action should not be dismissed should she as a condition of continuing her action be required to repay the defendant the amounts paid under the Workmen's Compensation Act (R. L., c. 216) on the grounds that she became legally obligated to do so when she brought her common law action or that her counsel made a binding agreement at the hearing on September 14, 1948 that she would make repayment before continuing her common law action. The case of *Roberts* v. *Hillsborough Mills*, 85 N. H. 517 (affirmed in *Schofield* v. *Company*, 90 N. H. 422) is decisive of our first question in holding that her action should not be dismissed because she accepted compensation. The *Roberts* case holds that "The bringing of the action at law through his next friend was a sufficient repudiation thereof." *Id.*, 519. In the present case, the bringing of the master and servant action by the plaintiff after she became of age was a sufficient avoidance of any alleged election while a minor. The opinion speaks on page 520 as follows: "The right of the defendant to repayment, or to an accounting for the sums advanced by way of compensation, arises from an implied obligation

based solely on equity and good conscience. It was the defendant's right to decline to make payments by way of compensation until the authority of the mother to bind the plaintiff had been established by her appointment as guardian, or by the bringing of the appropriate petition as his next friend. There being no evidence of fraud, the defendant must be presumed to have made the payments with a full knowledge of the legal privileges that the law accords to infants." The fact that in the present case the minor has become of age and sues in her own right is merely one of the circumstances to be considered by the Court in deciding whether repayment is a condition precedent to bringing the action for negligence. In its discretion the Trial Court could properly find and rule as it did that the plaintiff was not required under the circumstances of this case to make reimbursement in order that she might proceed with the action of case, had this been the only ground for the defendant's motion to dismiss.

However, another question before us is whether the attorneys for the parties made an agreement that if the defendant would furnish the plaintiff with a certain schedule of payments, made by the defendant to the plaintiff, the latter would reimburse the defendant for these payments *before* proceeding with her common law action. An examination of the record convinces us that they did make such an agreement. The pertinent parts of the record relating to this agreement made at the hearing before *Goodnow*, C. J., on September 14, 1948 read as follows:

"Mr. Burns: If the Court please, our position is, that we have taken the defense, that certain payments have been made to this plaintiff under the Workmen's Compensation law. We are prepared to prove that fact. Now the plaintiff wants a schedule of the payments made. We are willing to furnish this if they simply want proof of the motion which we filed. On the other hand, we don't want to be in the position of furnishing that schedule without knowing for what purpose the plaintiff wants it. She either has accepted the Act or hasn't. If she has, she is bound by it and the common law action should be dismissed. If the Court should deny our motion, then we have an alternative motion on file, and that is the defendant should be reimbursed for the payments which have been made to the plaintiff. It doesn't seem to us that the plaintiff should be put in both positions of *first* getting this information as to the payments having been made (she knows the payments have been made without any proof), and secondly, she should either admit that she accepted them or deny that fact and we prove it. If she accepted them, the common law action

should be dismissed, or, in the alternative, the plaintiff should be barred from proceeding with her common law action *until* she reimburses us with the payments which have been made. . . . Court: Well are you prepared to furnish a copy of this to him or let him look at it or what? . . . Mr. Burns: Well, I should think he would be obliged to elect. Court: Well, you got to have something to elect between. Elect how? Mr. Burns: Well, he should choose one or the other. It seems to us it isn't fair to the defendant to permit him to examine it without it being used for the purpose of determining whether she has accepted compensation or to reimburse the defendant for the payments so made. It proves either one of two things, that she has received these payments and that they were made to her under the Compensation Act, or, she has received those payments and the defendant should be reimbursed for such payments *before* the plaintiff is permitted to proceed. Court: Well, I seem to be a little thick. I don't get the order. Mr. Burns: If the Court please, the paper which I showed you is a schedule of the payments which the defendant claims were made to the plaintiff. Now the defendant claims they were made to her in accordance with and pursuant to the Workmen's Compensation Act. Now assuming that is so, then the plaintiff's common law action is barred. Now assuming that the plaintiff is not barred by the acceptance of the Act and she is still permitted to pursue her common law remedy, then that is a schedule of the payments made to her under the Workmen's Compensation Act and *before she is permitted to proceed with her common law action* she should reimburse the defendant. She can't have both. In other words, she can't retain those payments and *still pursue* her common law remedy. Court: Isn't that true anyway? Does Brother Sleeper have to elect that in advance now? I mean isn't it true if she did accept the Act and now wishes to have that acceptance set aside and proceed at common law, she's got to pay that back, what she received? Mr. Burns: That is what we understand the law to be. Court: What do you understand the law to be, Brother Sleeper? Mr. Sleeper: I think that is so. I haven't any doubt but that is so. Court: She can't have both, we know that. Mr. Burns: We want to make sure that is definitely understood. Court: Well, both you and Brother Sleeper agree on that. Mr. Burns: We should raise the flag. It has been a long time since that happened. Court: That being agreed, what is the objection to his looking at it? Mr. Burns: Well, in view of the fact that he has agreed to it, I now have no objection to his looking at it. Mr. Sleeper: Take too long for me to copy these amounts but I suppose I could

probably have a copy, couldn't I? Mr. Burns: Yes, we're willing to furnish counsel with a copy of those payments."

Five times in the course of the negotiations (as shown by the emphasis which is ours) the defendant's attorney made it perfectly clear that the *one* condition upon which the information was furnished was that the plaintiff should pay back the money she had received *before* going on with her common law action. The record indicates that everyone so understood it at the time. The defendant kept its bargain by furnishing the information and the plaintiff's attorney having stated that he expects to be bound by "whatever statements I made at that time. . . . " no reason appears why he should not be taken at his word and the agreement enforced. *Burtman* v. *Butman*, 94 N. H. 412.

This is not a case of novices lost in a forest of legal technicalities, but of experienced trial attorneys who knew exactly what they wanted and were willing to bargain for it without consulting the law or making their agreement dependent on it in any way. Had they intended to make their agreement dependent upon what the law actually was, assuredly they knew how to do it. It is common knowledge that the scrupulousness with which arrangements of this sort are kept in this state is of inestimable value in the administration of justice. We have affirmed this principle of enforcing such contracts, oral as well as written as recently as in *Burtman* v. *Butman, supra.*

The legal effect of what counsel admittedly said at the hearing in September, 1948 is essentially a matter of law for this court. There were no facts to be found in the ordinary sense as the Justice who transferred the case neither saw nor heard the witnesses at the time the agreement was made. The situation differs from that in *Romano* v. *Company*, 95 N. H. 404 where the Court below had to find as a fact upon evidence presented whether a widow was a dependent on her husband.

It follows that the order is

*Exceptions sustained in part.*

JOHNSTON, C. J. and DUNCAN, J., dissented: the others concurred.

JOHNSTON, C. J. and DUNCAN, J., *dissenting:* The issue presented calls for determination of the terms and legal effect of an oral stipulation made by counsel in open court. We are not here concerned with the interpretation of a document the terms of which are fixed by a writing. What the terms of the agreement were was properly a ques-

50

tion of fact for the Trial Court. *Romano* v. *Company*, 95 N. H. 404. There was no express agreement, either by unilateral or mutual promises, to make a refund in advance of trial. In our opinion the Trial Court acted within reason in finding that plaintiff's counsel did not impliedly agree that his client should return the compensation payments. If the agreement was that the plaintiff "can't have both . . . she can't retain those payments and still pursue her common law remedy," this was no more than an agreement as to what the law was thought to require. The plaintiff was under no compulsion to agree to return the payments gratuitously; and experienced counsel are not given to obligating a client to the adverse party for the privilege of inspecting evidence commonly obtainable by legal process. At least the agreement could reasonably be found to relate to what the law required, and not to the performance of a voluntary undertaking for a consideration. The view of the law upon which the parties agreed has proved to be mistaken. It is well settled that such agreements are not binding. "It is the general rule that stipulations as to what the law is are of no validity." 92 A. L. R. 663, 664. We would uphold the Superior Court in allowing the plaintiff her right to prosecute the common law action as permitted by *Roberts* v. *Hillsborough Mills*, 85 N. H. 517.