Division of Mental Health and Developmental Services
Division of Public Health Services
No. 91-289

PETITION OF DAVID DONOVAN d/b/a DONOVAN GROUP HOME

(New Hampshire Division of Mental Health and
Developmental Services and Division of
Public Health Services)

April 16, 1993

*David H. Bownes*, of Laconia, by brief and orally, for the petitioner.

*John P. Arnold*, attorney general (*Daniel J. Mullen*, assistant attorney general, on the brief and orally), for the State.

THAYER, J. The petitioner seeks review of the dismissal of his administrative appeals from decisions to revoke his license and certification to operate the Donovan Group Home, a residential facility for the developmentally disabled. We hold that the presiding officer erred in dismissing the petitioner's appeals and therefore reverse.

The petitioner, David Donovan, began operating the Donovan Group Home in Alton in 1984. On August 3, 1990, representatives of State agencies conducted a site inspection. As a result of that inspection, the division of elderly and adult services (DEAS) made findings of physical and emotional abuse of three residents of the home. The August 22 notice to Donovan informed him of the DEAS findings and advised him that he could challenge the findings through an administrative appeal, which Donovan requested on August 29, 1990.

On August 23, 1990, the division of mental health and developmental services (DMHDS) notified Donovan that his certification would be revoked based on twelve violations of DMHDS regulations, and based on the reports of abuse "substantiated" by the DEAS. The DMHDS notice informed Donovan that he could appeal the decision to revoke his certification; Donovan requested an administrative hearing on August 29, 1990. On August 24, 1990, the division of public health services (DPHS) notified Donovan that his license to operate a sheltered care facility/community residence was revoked and ordered him to cease and desist operations. The revocation was based on the results of the site inspection on August 3, 1990, during which twelve violations were reported. The August 24 notice to Donovan informed him that the order would become final unless he requested an adjudicative hearing, which he requested on September 8, 1990.

The three separate appeals from the decisions of the DEAS, the DMHDS, and the DPHS were assigned to a single presiding (hearing) officer. After a prehearing conference to establish how the appeals would proceed, the presiding officer issued an order indicating that the appeal of the DEAS action would be heard before the appeals of the DMHDS and DPHS actions. The hearing on the DEAS findings of abuse was held in December 1990. On March 1, 1991, the presiding officer issued a decision that upheld the findings of abuse. Donovan filed a petition for rehearing, which was denied, and then sought review of the decision in the Merrimack County Superior Court.

On April 12, 1991, the DMHDS and the DPHS joined in a motion to dismiss Donovan's appeals of the revocation of his license and certification. The divisions argued that because their actions were based in part on the DEAS findings of abuse, which were upheld by the presiding officer, their actions in revoking Donovan's license and certification should likewise be upheld. They also argued that Donovan's appeals were moot since both his license and certification had expired, and he did not reapply. Donovan did not respond to the motion to dismiss. On May 8, 1991, the presiding officer informed Donovan that his appeals had been dismissed. Donovan's motion for reconsideration was denied, and this appeal followed.

 DPHS findings can be appealed pursuant to RSA 151:8, which provides for appellate review under RSA chapter 541. There is no statutory provision for appellate review of DMHDS findings; thus, a party must invoke this court's jurisdiction by a petition for writ of certiorari. *See Petition of Breau*, 132 N.H. 351, 357, 565 A.2d 1044, 1048 (1989). Under this procedural dichotomy, the standard of review of the separate divisions' findings differs only slightly. *Compare id.* at 357, 565 A.2d at 1048 *with* RSA 541:13 (1974). Accordingly, in this case, we will overturn the divisions' finding if it is unreasonable or unlawful.

 Donovan contends that the presiding officer erred in dismissing his appeals because the DEAS findings of abuse were not yet final since they were being reviewed by the superior court. Donovan also disputes the claim that his appeals were moot because the DMHDS and DPHS made findings independent of the DEAS findings that would greatly inhibit his ability to reapply for a license and certification in the future if they are allowed to stand unchallenged. The presiding officer's decision did not include "findings of fact and conclusions of law," so we are not in a position to know whether he

based his decision on the divisions' res judicata argument, or on the mootness argument. *See* RSA 541-A:20 (Supp. 1992). Accordingly, we will address both arguments.

▉ The DMHDS and DPHS contend that the physical and emotional abuse documented by each division in taking action against Donovan, and found by the presiding officer after the DEAS hearing, is conduct that is a sufficient basis, in and of itself, to revoke Donovan's license and certification. The divisions argue that the doctrine of res judicata should be applied to the presiding officer's March 1, 1991, finding of abuse. In order for res judicata to apply to a finding or ruling, there must be "a final judgment by a court of competent jurisdiction [that] is conclusive upon the parties in a subsequent litigation involving the same cause of action." *Marston v. U.S. Fidelity & Guaranty Co.*, 135 N.H. 706, 710, 609 A.2d 745, 747 (1992) (quotation omitted); *see Morin v. J.H. Valliere Co.*, 113 N.H. 431, 434, 309 A.2d 153, 155 (1973) (res judicata may apply to unappealed decision of administrative agency).

If the presiding officer based his May 8, 1991, decision on the divisions' res judicata arguments, such a decision would have been improper, as the findings of abuse were not final because an appeal in the Merrimack County Superior Court was pending. On March 11, 1993, the Superior Court (*Fauver*, J.) upheld the presiding officer's findings of abuse. If Donovan chooses to pursue further appellate review, the finality of the findings will still be in question. We express no opinion as to whether dismissal of the appeals or further determination on the merits would be appropriate should the findings of abuse become final.

The divisions' second argument is that Donovan's appeals are moot because he has allowed his license and certification to expire, and that if he chooses to apply for a new license and certification "the previous violations of the rules and regulations would have no effect." Donovan contests this characterization and points to RSA 151:4 and 151:7, which provide that a license application will be denied for noncompliance with the statute and the DPHS rules and regulations. *See* RSA 151:4, IV, :7, II(a) (1990). Under DPHS regulations, a license applicant must certify that he or she "has not had a license revoked, suspended, or denied for noncompliance with home health care licensing in the state of New Hampshire . . . ." N.H. ADMIN. RULES, He-P 809.02(c)(2)(b) (1992). Under DMHDS regulations, an application for certification may be denied for any substantiated reports of abuse or neglect of residents. *See* N.H. ADMIN.

Rules, He-M 1001.04(c), 1001.12(a)(4) (effective September 1, 1988—August 31, 1994).

The actions taken by the DPHS and the DMHDS clearly have the potential to damage the petitioner's standing in the community and impair the pursuit of a particular profession. *Cf. Petition of Bagley*, 128 N.H. 275, 284, 513 A.2d 331, 338 (1986) (information in central registry of division for children and youth services that petitioner's husband was perpetrator of child abuse would prevent petitioner from obtaining daycare license); *see also Petition of Breau*, 132 N.H. at 364, 565 A.2d at 1052 (State agency may rely on factual findings of foreign agency in revoking teaching credentials).

We conclude that the petitioner's appeals did not become moot upon the expiration of his license and certification. The petitioner has retained a stake in the matter; the divisions' findings of noncompliance with a broad range of regulations will continue to have a detrimental effect on any future applications made by the petitioner. *See Sibron v. New York*, 392 U.S. 40, 55–58 (1968) (challenge to criminal conviction is not moot since collateral consequences remain after sentence is served). Dismissal of the petitioner's appeals based upon the mootness argument would be unreasonable.

Because we are uncertain as to the grounds upon which the presiding officer based his decision, we reverse and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

All concurred.