Original
No. 93-144

PETITION OF CITY CAB OF MANCHESTER, INC. d/b/a
TOWN & COUNTRY TAXI
(New Hampshire Department of Labor)

December 19, 1994

*Douglas & Douglas,* of Concord (*Robert J. Rabuck* and *C. Kevin Leonard* on the brief, and *Charles G. Douglas, III* orally), for the petitioner.

*Jeffrey R. Howard,* attorney general (*Lucy C. Hodder,* assistant attorney general, on the brief and orally), for the State.

## MEMORANDUM OPINION

JOHNSON, J. The question presented is whether the petitioner, City Cab of Manchester, Inc. d/b/a Town & Country Taxi (City Cab), must secure workers' compensation for its taxi drivers. A New Hampshire Department of Labor hearing officer answered in the affirmative, finding the drivers to be employees of City Cab, not independent contractors. *See* RSA 281-A:5 (Supp. 1993). We affirm.

We are treating City Cab's appeal as a petition for writ of certiorari. *See Petition of Donovan d/b/a Donovan Group Home,* 137 N.H. 78, 80, 623 A.2d 1322, 1324 (1993). Accordingly, we overturn the hearing officer's decision only if it is "unreasonable or unlawful." *Id.*

■ "[W]e determine the existence of an employee-employer relationship for the purposes of workers' compensation through reference to the factors set forth in the New Hampshire Department of Labor regulations." *Appeal of Longchamps Electric,* 137 N.H. 731, 733, 634 A.2d 994, 996 (1993). Labor Rule 101.05 provides as follows:

"Employee-employer relationship" shall be defined using the following criteria:

(a) The employee is permitted, suffered, required or directed by the employer in consideration of direct or indirect gain or profit to engage in the employment of the employer;

(b) The employer provides the employee with instructions, training or orientation as to when, where and how the work is to be performed to the employer[']s specifications;

(c) The employer supervises the work of the employee;

(d) The employee may submit oral or written reports to the employer regarding work activities;

(e) The work performed by the employe[e] is part of the regular business of the employer;

(f) The employer supplies the employee with the instrumentalities, tools and the place of work without a significant investment by the employee;

(g) The employer pays the employee by the hour, week, month, piece or commission and may pay business and travel expenses;

(h) The employee is prevented from hiring, supervising and paying assistants to complete a specific goal in the manner of a subcontractor;

(i) The employer can discharge the employee with a right to no more than wages already earned or the employee can end the relationship without incurring any liability as in a breach of contract;

(j) The employee[s] shall not present themselves as being a business entity; and

(k) Any other factor which contributes to the nature of the relationship that the parties believe they are creating.

N.H. ADMIN. RULES, Lab 101.05 (1991); *see also* RSA 281-A:2, VI, VIII (Supp. 1993). This test is essentially the same as the one found in expired Labor Rule 104.02 and the RESTATEMENT (SECOND) OF AGENCY § 220, at 485–86 (1958). *See LaVallie v. Simplex Wire & Cable Co.,* 135 N.H. 692, 695–96, 609 A.2d 1216, 1218 (1992). Under this standard, the determination of whether an employee-employer relationship exists depends on the facts of the case. *See Merchants Ins. Group v. Warchol,* 132 N.H. 23, 27, 560 A.2d 1162, 1165 (1989); *Burnham v. Downing,*

125 N.H. 293, 296, 480 A.2d 128, 130 (1984). Because the hearing officer's fact findings are supported by the record, we ask only whether her application of the rule to these facts is unlawful or unreasonable. *See Petition of Donovan*, 137 N.H. at 80, 623 A.2d at 1324.

The hearing officer's decision states in pertinent part:

> During [the] hearing it was pointed out that City Cab . . . is in the business of leasing cars to drivers. The drivers are able to keep whatever they earn over the course of their lease period. The company provides a dispatch service which the drivers may use or choose to ignore. There is no control over the drivers in regard to dress code, work activities, or any other area of their work. It was pointed out that the company has one driver [who] owns [her] own taxi for which [she] only lease[s] the company's dispatch service and that the difference between the drivers [who] lease cabs and those who own their cabs is "the financial ability to bankroll a cab." A written lease agreement between the company and the driver was submitted. In regard to new drivers, it was stated that an experienced driver would take them out on a voluntary basis as they were not forced to give any training. No written, oral or income reports are required by the company.

> . . . .

> . . . A review of Section 14-209 of Article IX of the Manchester City Ordinances shows that it is required for any person, or other entity, to secure a business license in order to operate a taxi cab in the City of Manchester, and to meet other requirements of the ordinance. It would appear that to truly be independent contractors, the drivers are required to have a business license, their own dispatch service not a centralized dispatch service, as well as a taxi cab driver[']s license as required by Section 14-220, in order to present themselves as a business entity.

These findings adequately support the hearing officer's decision. Although City Cab "is in the business of leasing cars to drivers," it is also in the business of taking calls from customers for taxi service and dispatching drivers to these customers. There is, consequently, a continuous, essential connection between City Cab's work and that of the drivers, *see Timberlake v. Frigon & Frigon*, 438 A.2d 1294, 1297–98 (Me. 1982), making the drivers' labor a critical "part of the regular business of the employer." N.H. ADMIN. RULES, Lab 101.05(e).

Moreover, as the hearing officer pointed out, the drivers do "not present themselves as being a business entity." N.H. ADMIN. RULES, Lab 101.05(j). For example, they lack the proper business licenses for running a taxicab enterprise and obtain customers through City Cab's dispatch service. As City Cab admits, the taxicabs bear its "Town & Country Taxi" logo. A customer would have no reason to suspect that a driver was a business entity distinct from City Cab.

City Cab argues that certain facts found by the hearing officer, as well as facts appearing in the record, could support a decision in its favor under some of the other criteria listed in Labor Rule 101.05. The hearing officer's determination to afford more weight to the criteria discussed above, however, is neither unlawful nor unreasonable. *See Petition of Donovan*, 137 N.H. at 80, 623 A.2d at 1324.

*Affirmed.*

All concurred.