Hillsborough-northern judicial district
No. 95-359

JOANNE T. HUDON & a.

v.

CITY OF MANCHESTER

November 13, 1996

*Nixon, Raiche, Manning & Branch, P.A.*, of Manchester (*Leslie C. Nixon* on the brief and orally), for the plaintiffs.

*McDonough & O'Shaughnessy, P.A.*, of Manchester (*Robert G. Whaland* on the brief and orally), for the defendant.

JOHNSON, J. The plaintiffs, eight clerical workers at the Manchester airport, appeal an order of the Superior Court (*Arnold*, J.) granting defendant City of Manchester's motion for summary judgment and denying the plaintiffs' cross-motion for summary judgment. Two of the plaintiffs, Sharon Lolicata (formerly Demers) and Deborah A. Tessier, also appeal an order of the Superior Court (*Groff*, J.) which granted, in part, the defendant's motion to dismiss their claims. We affirm in part, reverse in part, and remand.

The plaintiffs were, or currently are, employed as clerical workers in the aviation department of the Manchester airport (airport clerical workers). In December 1989, the Manchester Board of Mayor and Aldermen (BMA) voted to give all non-union (non-affiliated) employees a series of raises, including a 6% raise effective January 1, 1991 (the 1991 raise). At the time the raises were awarded, the plaintiffs, or the predecessors in their positions, were members of a bargaining unit represented by the American Federation of State, County and Municipal Employees union (AFCSME). In January 1990, the airport clerical workers petitioned the New Hampshire Public Employee Labor Relations Board (PELRB) to decertify their union status. Decertification was achieved on April 27, 1990, when the PELRB granted AFSCME's request to withdraw its certification as the bargaining representative. The airport clerical workers then sought the same compensation package that had been granted non-affiliated employees in December 1989. The airport workers eventually were awarded all the raises given to the non-affiliated workers of the City of Manchester (city) with the exception of the 1991 raise. City officials created a special internal designation for the airport clerical workers — "non-affiliated class B" — in order to distinguish them from other non-affiliated employees for personnel and payroll purposes. The plaintiffs filed a declaratory judgment action, requesting that the court order the city to award them the same benefits and compensation accorded to other non-affiliated employees. The superior court dismissed, in part, the claims of Lolicata and Tessier. The parties subsequently filed cross-motions for summary judgment. The superior court granted the defendant's motion and denied the plaintiffs' motion, and this appeal followed.

*I. Motion To Dismiss*

Plaintiffs Lolicata and Tessier challenge the order granting the defendant's motion to dismiss their claims. The ruling in dispute was issued orally, after a hearing on December 16, 1994. While no record was kept of the proceedings, plaintiffs' counsel admitted, in a "motion for reconsideration/clarification" dated December 19,

1994, that "counsel for the plaintiffs [during the December 16th hearing] agreed that, since . . . Ms. [Lolicata] and Ms. Tessier were hired after 1991, they would not be entitled to the pay raise. Therefore, it was agreed that that claim could · be dismissed." Shortly after the December 16th hearing, plaintiffs' counsel came to believe that she improperly agreed to the dismissal and filed a motion for reconsideration/clarification, conceding the mistake. Counsel asked the court to allow her to "clarify" the plaintiffs' position and accordingly deny the defendant's motion to dismiss. On December 27, 1994, plaintiffs' counsel filed a supplemental motion alleging that the court order was in violation of Superior Court Rule 57. The clerk of court's written notice of the court's oral order was issued on January 4, 1995. The plaintiffs responded with a second motion for reconsideration which was denied, without explanation, by the superior court on January 23, 1995.

On appeal, the plaintiffs allege numerous deficiencies in the trial court's disposition of the Tessier and Lolicata claims. We analyze first those issues associated with the oral order on the defendant's motion to dismiss, and then address those issues arising from the plaintiffs' motions for reconsideration.

The plaintiffs first argue that, based on the pleadings in this case, there was no legally cognizable basis for the trial court's oral order. We need not consider this argument, however, given that plaintiffs' counsel "agreed" during the hearing that the claims of Tessier and Lolicata "could be dismissed." That agreement effectively waived the plaintiffs' ability to later attack the legal sufficiency of the court's order on appeal. *Cf. Proctor v. Bank of N.H.*, 123 N.H. 395, 402, 464 A.2d 263, 267 (1983) ("[t]he failure to make contemporaneous objections and exceptions generally constitutes a waiver of such objections on appeal"). Moreover, without a transcript of the hearing, we are unable to determine whether the trial court, when making its ruling, relied on any additional legal grounds other than the agreement of the parties. *See Dombrowski v. Dombrowski*, 131 N.H. 654, 663, 559 A.2d 828, 833 (1989). Accordingly, because the appealing party has the burden of presenting an adequate record to this court, *see Rix v. Kinderworks*, 136 N.H. 548, 553, 618 A.2d 833, 836 (1992), and the plaintiffs have provided us with documents tending to show only that the December 16th ruling was made on the basis of counsel's agreement, we find that the plaintiffs' first argument is waived.

The plaintiffs next argue that Superior Court Rule 57 renders the agreement made by counsel during the December 16th hearing invalid as a matter of law. Superior Court Rule 57 states:

The Court will not hear any motion grounded upon facts, unless they are verified by affidavit, or are apparent from the record or from the papers on file in the case, or are agreed to and stated in writing signed by the parties or their attorneys; and the same rule will be applied as to all facts relied on in opposing any motion.

The plaintiffs argue that the trial court's oral ruling was invalid because it was based on (1) facts not apparent from the pleadings and (2) an agreement not stated *in writing* signed by the parties or their attorneys. We have recognized, however, that a trial court may deviate from the strict language of Rule 57 when neither party objects to the proceeding. *See Town of Bedford v. Brooks*, 121 N.H. 262, 265-66, 428 A.2d 897, 899-900 (1981); *Wein v. Arlen's*, 98 N.H. 487, 489, 103 A.2d 86, 88 (1954).

Furthermore, there are strong policy reasons for affirming the trial court's order. Attorneys are officers of the court, *cf.* SUP. CT. R. 37(1)(b), and as such, judges should be able to reasonably rely on the stipulations and agreements of counsel made in court regarding matters before them. "This is not a case of novices lost in a forest of legal technicalities . . . . It is common knowledge that the scrupulousness with which arrangements of this sort are kept in this state is of inestimable value in the administration of justice." *Johnson v. Company*, 96 N.H. 44, 49, 69 A.2d 703, 707 (1949). To require strict adherence to Rule 57 in this case would undermine the ability of trial judges to resolve disputes based on agreements made by counsel during court proceedings.

## II. Motions for Summary Judgment

The plaintiffs contend that the superior court erred in both granting the defendant's motion for summary judgment and denying their motion for summary judgment. "Summary judgment is an appropriate means of avoiding the expense and time of a full trial," *Mason v. Smith*, 140 N.H. 696, 698, 672 A.2d 705, 706 (1996) (quotation omitted), and thus "[t]he trial court must grant summary judgment when it finds no genuine issue of material fact, after considering the affidavits and other evidence presented in a light most favorable to the non-moving party, and when the moving party is entitled to a judgment as a matter of law." *Conrad v. Hazen*, 140 N.H. 249, 250, 665 A.2d 372, 374 (1995) (quotation omitted); *see* RSA 491:8-a (1983).

The plaintiffs assert that the superior court erred in granting the defendant's motion for summary judgment because its

order contains findings of fact that were unsupported by the record and because its legal rulings were incorrect. We agree. The trial court granted the defendant's motion on the basis that the defendant would be committing an unfair labor practice if it awarded the 1991 raise to the plaintiffs "because it would reward them for leaving the union." *See* RSA 273-A:5, I(c) (1987) (public employers prohibited from discriminating in the terms and conditions of employment "for the purpose of encouraging or discouraging membership" in a union). We have recognized that a claim under RSA 273-A:5 requires evidence of a retaliatory or discriminatory motive on the part of the public employer. *See Appeal of Sullivan County*, 141 N.H. 82, 84-85, 677 A.2d 682, 683-84 (1996); *Appeal of Prof. Firefighters of E. Derry*, 138 N.H. 142, 145, 635 A.2d 1352, 1354 (1993).

When reviewing whether the trial court properly granted a defendant's motion for summary judgment, "we consider the affidavits and any other evidence, as well as all inferences properly drawn from them, in the light most favorable to the plaintiff." *Gould v. George Brox, Inc.*, 137 N.H. 85, 87-88, 623 A.2d 1325, 1327 (1993). Our review of the summary judgment record reveals no evidence before the trial court which establishes improper motive on the part of the city. Further, it is unclear from the evidence on the record whether AFSCME would be able to sustain its burden of proving wrongful intent under the facts of this case if it chose to pursue a claim under RSA 273-A:5. *See Appeal of Sullivan County*, 141 N.H. at 85, 677 A.2d at 684. Therefore, we find that the trial court erred when it concluded on this record at the summary judgment stage that the city would commit an unfair labor practice by granting the plaintiffs the 1991 raise. *See* RSA 273-A:5.

The plaintiffs also challenge the trial court's ruling that because they were members of the union, or now occupy positions that were unionized *at the time the raises were awarded* to non-affiliated employees, the city is not obligated to award them the 1991 raise. The plaintiffs argue that this ruling constituted error because the Manchester personnel ordinances do not grant the city the authority to limit payment of the non-affiliated employees raise based on former union membership.

Chapter 18 of the Manchester Code of Ordinances sets forth a detailed scheme under which non-affiliated employees are compensated. The ordinance states that all non-affiliated employees "shall be grouped into classes, and each class shall include those positions sufficiently similar in respect to their duties and responsibilities so that . . . the same rates of compensation are applicable thereto."

MANCHESTER CODE OF ORDINANCES § 18-24. Further, the code mandates that "[a]ll the positions in each class shall be compensated in accordance with the class grade . . . as set forth in the schedule of the classification plan and at the rates of pay for such class grade as set forth in the schedules of the compensation plan." *Id.* § 18-25. The employee compensation schedules do not apply to any union members who are subject to a separate contract negotiated with the city. *See id.* § 18-23. Classification and compensation plans are maintained by the personnel director or the personnel committee but are subject to revision only by amendment by the BMA. *Id.* § 18-64(a),(b); *see Jaskolka v. City of Manchester*, 132 N.H. 528, 533, 567 A.2d 549, 552 (1989). Because we interpret the language of an ordinance according to its plain and ordinary meaning, *see Town of North Hampton v. Sanderson*, 131 N.H. 614, 618, 557 A.2d 643, 646 (1989), a new classification of city employees could have been created only by amendment by the BMA.

The pay raise at issue was part of the compensation plan approved by the BMA for non-affiliated employees in December 1989. The minutes of the December 1989 meeting of the BMA, however, nowhere reflect that the compensation package was limited to employees who were non-affiliated on that date. The plaintiffs thus argue that they are entitled to the package of pay raises approved in December 1989 because the city failed to identify any provision of the Manchester Code of Ordinances which gives the BMA the power to establish new classes without formal amendment, and therefore the creation of the "class B non-affiliated" designation was illegal.

For purposes of deciding whether the trial court properly granted the defendant's motion for summary judgment, we must construe the record before the court in the light most favorable to the non-moving party. *Gould*, 137 N.H. at 87-88, 623 A.2d at 1327. The evidence on the record, while supporting the claim that the BMA made a "decision" not to grant the plaintiffs the 1991 raise, demonstrates little else. Specifically, the affidavit of the city's chief negotiator and supporting documents indicate only that a "decision" was made; there is no evidence that this "decision" created a new class of non-affiliated employees through revision to the compensation and classification plans. The city's answers to the plaintiffs' interrogatories indicate that class B is "an internal designation." Further, the only group of employees specifically excluded from the compensation package approved by the BMA in December 1989 was "non-affiliated department heads." We find, therefore, that the trial court erred when it concluded, at the summary judgment stage, that the city was under no obligation to award the plaintiffs the 1991 pay

increase because of the union status of the airport clerical workers at the time the raise was awarded.

Consequently, because we find that the trial court erred in holding that the city was entitled to a judgment in its favor, we reverse the order granting the defendant's motion for summary judgment.

The plaintiffs next argue that based on the undisputed facts, the trial court erred in denying their motion for summary judgment, and further, that they are entitled to judgment as a matter of law. We do not reach these issues, however, because the trial court has yet to decide whether the plaintiffs' claims are barred by the statute of limitations, RSA 508:4 (1983 & Supp. 1995). Early in the litigation, the defendant moved to dismiss the plaintiffs' claims, relying on RSA 508:4, which provides that "all personal actions" must be brought within three years "of the act or omission complained of." The defendant alleged that the claims are time barred because the statute of limitations period commenced, at the latest, on April 3, 1991 — the date that the plaintiffs were allegedly advised that they would not be receiving the 1991 raise — while the petition was not filed until after April 24, 1994. The plaintiffs apparently challenged the motion on the basis that they waited to take legal action on the advice of city officials, and therefore the limitations period did not begin to run until a much later date. The superior court deferred ruling on the issue until a later date when an evidentiary hearing could be held, finding that "[c]learly, the material facts relating to concealment and estoppel are in dispute." A subsequent order on the statute of limitations defense was never made; instead, the superior court granted the defendant's motion for summary judgment, which rendered the statute of limitations claim moot.

We are likewise unable, on the basis of the incomplete record presently before the court, to decide the statute of limitations question. Moreover, disposition of this issue would require this court to act as fact finder, a role we have refused to assume. *See Bogardus v. Zinkevicz*, 134 N.H. 527, 532, 596 A.2d 722, 724 (1991).

Because the superior court has yet to decide whether the plaintiffs' claims are barred by the statute of limitations, it would be premature for us to address the plaintiffs' request to enter judgment in their favor or decide issues of law raised in their motion and brief. We therefore remand this case to the superior court for further proceedings consistent with this opinion.

*Affirmed in part; reversed in part; remanded.*

All concurred.