Rockingham
No. 97-725

JOHN F. CANTY, JR., INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF JOHN F. CANTY

v.

NATALIE A. HOPKINS

March 21, 2001

*John F. Canty, Jr.,* on the brief and orally, *pro se.*

*Coffey Legal Services,* of Portsmouth (*John J. Coffey* on the brief and orally), for the defendant.

BROCK, C.J. The plaintiff, John F. Canty, Jr., appeals from an order of the Superior Court (*Fauver,* J.) dismissing his claims against the defendant, Natalie A. Hopkins. We affirm.

A review of the pleadings reveals the following facts. The plaintiff is the son and sole heir of John and Caroline Canty, who died in 1991

and 1986, respectively. The defendant was a friend of the plaintiff's parents for many years. In June 1970, the plaintiff's parents and the defendant purchased property in Rye as joint tenants with the right of survivorship. Two joint bank accounts were set up in the names of the plaintiff's father and the defendant. The Rye property and the bank accounts passed to the defendant upon the death of the plaintiff's father.

The plaintiff was appointed administrator of his father's estate. When the plaintiff filed the inventory for the estate in 1992, he alleged that the defendant held various estate assets. On May 20, 1994, the probate court extended the time allowed for the plaintiff to file claims against the defendant until July 15, 1994. On June 16, 1994, the probate court appointed a special administrator to the estate based on the plaintiff's failure to comply with filing requirements. Other than the plaintiff's allegations, the special administrator found no basis for claims against the defendant. On October 13, 1995, the probate court found that the plaintiff failed to advance his claims against the defendant and had not provided the special administrator with the necessary information to bring the claims. The probate court ruled that the plaintiff's claims against the defendant were groundless. We summarily affirmed this decision. See In re Estate of John F. Canty, No. 95-874 (N.H. May 3, 1996).

On January 13, 1997, the plaintiff filed a bill in equity against the defendant in superior court. He brought claims both individually and as administrator of his father's estate. Counts I and II allege that the defendant exercised undue influence over the plaintiff's father to obtain joint tenancy over the two bank accounts. Count III alleges that the plaintiff is entitled to a remainder interest in the Rye property. Counts IV and V allege that the deed to the Rye property should be reformed and construed as a tenancy in common, rather than a joint tenancy with right of survivorship.

The defendant moved to dismiss on the grounds that the plaintiff's claims were barred by res judicata, the plaintiff lacked standing, and the plaintiff had failed to state claims upon which relief could be granted. The superior court granted the defendant's motion based on the doctrine of res judicata. The court ruled that the plaintiff had the opportunity to litigate his claims in probate court and his failure to do so barred him from relitigating those same claims in superior court. The court also found that the plaintiff was removed as administrator of his father's estate in June 1994. The court noted that despite the caption on the petition indicating that the plaintiff was bringing his suit both as the administrator of his father's estate and individually, the plaintiff's claims were pled

only in his capacity as administrator, not individually. The court stated that "the dismissal of the claim brought in the plaintiff's capacity as administrator disposes of the entire case."

In a prolix and sometimes confusing manner, the plaintiff appeals the dismissal of his claims, contending that we should: (1) review *de novo* several rulings made by the superior court and correct the "manifest plain error(s)"; (2) decide whether "New Hampshire real estate held in putative joint tenancy/survivorship [is] includable in the probate estate of a deceased joint tenant leaving a surviving joint tenant"; (3) determine whether the "[p]robate [c]ourt [can] [d]ecree [d]eed [r]eformation and/or '[c]onstructive [t]rust' [r]elief without jurisdiction over the *res*, the legal title-holder, or the equitable title-claimant"; (4) determine when a "[p]robate [e]state is 'final' for subsequent *res judicata*/collateral estoppel purposes"; and (5) determine whether he was "ever '[r]emoved' or otherwise divested of representative standing on behalf of his [f]ather's [e]state."

"We review motions to dismiss to determine if the plaintiff's allegations are reasonably susceptible of a construction that would permit recovery." *Langlois v. Pomerleau*, 143 N.H. 456, 460 (1999) (quotation omitted). We assume the truth of all well-pleaded facts alleged by the plaintiff, construing all inferences in the light most favorable to the plaintiff. *See Bohan v. Ritzo*, 141 N.H. 210, 213 (1996). On appeal, the plaintiff has the burden to demonstrate error and must provide an adequate record for our review. *See Hudon v. City of Manchester*, 141 N.H. 420, 422 (1996).

The caption of the plaintiff's complaint indicated that he was bringing claims both as an administrator of his father's estate and individually. The trial court found that despite this caption, the plaintiff had pled each of the five counts in his capacity as administrator only. The court also found that the plaintiff was removed as administrator of his father's estate in June 1994. The plaintiff argues on appeal that the probate court never actually revoked his status as administrator.

We agree with the trial court that two of the five counts were pled only in the plaintiff's capacity as administrator. In counts I and II, the plaintiff alleges that the defendant wrongfully refused "after Demand to deliver said [bank account] funds to the Plaintiff (Administrator)." Thus the plain language of these two counts indicates that the plaintiff pled them as administrator of his father's estate and not individually.

■ We also agree that the plaintiff was removed as administrator of his father's estate. Upon due notice, a probate judge may revoke

the appointment of an administrator who "by reason of absence, or infirmity of body or mind, or by wasteful or fraudulent management in his trust, becomes unfit for the discharge thereof, or unsafe to be trusted therewith." RSA 553:10 (1997). After several revocations and reinstatements of the plaintiff's status as administrator in 1992, the probate court ordered on May 20, 1993, that the plaintiff would "remain as Administrator upon the condition that he comply with all filing requirements of the Probate Court." In its June 16, 1994 order, the probate court stated, "Upon review of the pleadings, the Court finds cause to appoint a Special Administrator to facilitate the administration of this estate, based upon John F. Canty's failure to comply with filing requirements of this Court." One can reasonably infer from the foregoing that the plaintiff had not met the conditions of the May 20, 1993 order, so that he was once again removed as administrator.

Even if the plaintiff were to argue that this was not sufficient notice of his removal, subsequent orders from the probate court made it clear that his appointment had been revoked. In a March 14, 1995 order, the court stated, "Mr. Canty was removed as Special Administrator in June, 1994, after numerous failures to abide by court rules and orders." Notices from the probate court in 1997 further indicated that the plaintiff was not a fiduciary in the case.

The plaintiff argues that the superior court erred in stating that a "successor" administrator was appointed to his father's estate in June 1994 when in fact a "special" administrator was appointed. We need not reach the issue because it does not alter our conclusion on the record before us that the plaintiff's appointment as administrator was revoked.

■■ A person who is not an administrator but who has an interest in an estate may bring an action as administrator, but only "if the administrator then or afterward appointed shall, at the first or second term of the court, indorse the writ and prosecute it as plaintiff." RSA 556:19 (1997). In this case, the special administrator did not find a basis to support the plaintiff's claims against the defendant. An administrator does not have a duty to enforce a doubtful claim merely because a party who has an interest in the estate thinks the claim is well founded. *Cf. Cogswell v. Railroad*, 68 N.H. 192, 194 (1894).

We therefore need not reach the issue of res judicata with regard to counts I and II because the plaintiff lacked standing to bring any claims as administrator of his father's estate. *See Quinlan v. City of Dover*, 136 N.H. 226, 230 (1992).

Counts III, IV, and V pertain to the Rye property. In count III, the plaintiff asserts that he is entitled to a remainder interest because of an agreement made between his parents and the defendant when they purchased the property. In counts IV and V, the plaintiff requests that the court reform the deed to the Rye property to reflect a tenancy in common between the defendant and the plaintiff's parents, and partition the property, granting him a vested two-thirds fee simple interest. The trial court found that under these counts the plaintiff was "not claim[ing] that he is entitled to the property other than through his father's estate," and therefore concluded he was bringing them only in his capacity as administrator.

Our review of these counts reveals that they are not specifically pled in either the plaintiff's individual or administrative capacity. In New Hampshire, we construe pleadings liberally, *see Pike Industries v. Hiltz Construction*, 143 N.H. 1, 3-4 (1998), and thus we disagree with the trial court that these three claims were only pled in the plaintiff's capacity as administrator. Nevertheless, we conclude on the record before us that the trial court correctly determined that these claims were barred by res judicata.

"In order for res judicata to apply to a finding or ruling, there must be a final judgment by a court of competent jurisdiction that is conclusive upon the parties in a subsequent litigation involving the same cause of action." *Petition of Donovan d/b/a Donovan Group Home*, 137 N.H. 78, 81 (1993) (quotation and brackets omitted). "Whether sounding at law or in equity, conflicting claims flowing from a common source should be determined in a single action, thus avoiding vexatious litigation and conflicting judgments." *Eastern Marine Const. Corp. v. First Southern Leasing*, 129 N.H. 270, 277 (1987) (quotation and brackets omitted).

 Despite language in the deed to the contrary, the plaintiff listed the Rye property in the inventory of his father's estate filed in the probate court in 1992. In its order dismissing the plaintiff's claims, the superior court included an excerpt of the case chronology set forth in an earlier probate court order. Not only had the probate court extended the time within which the plaintiff could file an inventory, but it also extended the period of time within which the plaintiff could resolve any claims which might be made against the defendant. Having listed the Rye property in his father's estate, the plaintiff could then have sought to quiet title in the probate court. *See* RSA 547:11-c (1997) (amended 2000). The probate court found that the plaintiff had failed to pursue the claims and had provided no

156

information to the estate's successor administrator to substantiate them. The probate court concluded that the plaintiff's claims were groundless.

We have reviewed the plaintiff's remaining arguments and find them to be without merit and warranting no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993). In light of our holding, we need not reach the defendant's remaining arguments.

*Affirmed.*

JOHNSON, J., sat for oral argument but retired prior to the final vote; THAYER, J., sat for oral argument but resigned prior to the final vote; BRODERICK, J., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred.