513 S.E.2d 692

**JORDACHE ENTERPRISES, INC.,
a Foreign Corporation, et al.,
Appellants,**

v.

**NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PA., Appellee.**

No. 24672.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 16, 1998.

Decided Nov. 24, 1998.

---

468

David W. Johnson, Esq., Charleston, West Virginia, Attorney for the Appellants.

Daniel R. Schuda, Esq., Ancil G. Ramey, Esq., Steptoe & Johnson, Charleston, West Virginia, Attorneys for the Appellee.

MAYNARD, Justice:

The appellants, Jordache Enterprises, Inc., and Avi, Joseph and Ralph Nakash, Jordache's officers, directors and sole shareholders, appeal the denial by the Circuit Court of Kanawha County of their Rule 60(b) motion to set aside a summary judgment on behalf of the appellee, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, in an insurance coverage and bad faith action. For the following reasons, we affirm in part and reverse in part.

## I.

## FACTS

The appellants are Jordache Enterprises, Inc. ("Jordache"), a New York corporation which is in the apparel business, and Joseph Nakash, Avi Nakash and Ralph Nakash, officers, directors and sole shareholders of Jordache.[1] The appellants purchased from the appellee, National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"), a directors and officers insurance and company reimbursement policy ("D & O policy") to provide coverage for its directors, the Nakash brothers, and seven officers, three of whom are the Nakashes.[2] The D & O policy indemnifies the directors and officers for losses resulting from any alleged wrongful act in their respective capacities as directors or officers and the corporation to the extent it has indemnified the directors or officers for a loss arising from the alleged wrongful act.

The chain of events culminating in the underlying actions began with the appellants' financial involvement in 1989 in the Retail Acquisition Corporation ("RAC") which was incorporated for the purpose of acquiring all of the assets of the retail divisions of several different companies.[3] The appellants' stated purpose for their involvement in RAC was the acquisition of outlets in which to market Jordache merchandise. The exact nature of the relationship between the appellants and RAC is disputed and formed the crux of the actions below.[4] It is not necessary to reproduce the controverted facts here because they are not pertinent to the narrow issue before us.

By April 1991, RAC found itself a debtor under Chapter 11 of the Bankruptcy Code.[5] Counsel for RAC subsequently prepared a draft complaint against the Nakash brothers and their various corporations, essentially alleging that the Nakash brothers exercised control of RAC to enrich themselves to the detriment of RAC and RAC's creditors.

The Nakash brothers began negotiations for settlement of RAC's claims and demanded that the appellee participate in and fund the settlement. The appellee declined to do so based on its belief that the alleged actions of the Nakashes and the alleged losses suffered by RAC were not covered by the D & O policy. The Nakash brothers ultimately reached a settlement with RAC wherein they agreed to pay RAC five million dollars. In return, Jordache was released from all

1. The three Nakash brothers are residents of New York.

2. National Union has its headquarters in New York.

3. RAC was formed under the laws of Delaware on December 27, 1989, for the purpose of acquiring all of the assets of the retail division of Heck's, Inc., HPI, Inc. and Singleton's Stores, Inc. RAC conducted business under the name L.A. Joe Department Stores.

4. In their briefs to this Court, the appellants state that Jordache invested substantial sums in RAC and guaranteed much of RAC's debt. According to the appellee, the Nakash brothers personally financed the creation of RAC as an S corporation. Built into the debt structure of RAC were rights held by the Nakash brothers to exchange debt for almost complete ownership of RAC's

stock and assume positions as RAC's officers and directors. The appellee states that RAC's gains and losses were reflected on the personal income tax returns of the Nakash brothers as individual owners rather than on Jordache's tax returns.

5. The bankruptcy proceeding was initiated on March 20, 1991, by an involuntary petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of West Virginia. On April 9, 1991, RAC consented to the entry of an order for relief and moved for the conversion from Chapter 7 of the Bankruptcy Code to Chapter 11. On April 15, 1991, an order for relief was entered under Chapter 11 and at that time RAC remained in possession of its assets and continued in business.

claims. This settlement was approved by the bankruptcy court.

On May 2, 1992, the appellants filed a complaint against the appellee in the Circuit Court of Kanawha County wherein they sought a declaration that the D & O policy covers their settlement of claims and defense costs. Further, the appellants alleged breach of contract; a violation of the West Virginia Unfair Trade Practices Act, specifically W.Va.Code § 33–11–4(9)(b), (c), (d), (e), and (f) [6]; a violation of the common law duty of good faith and fair dealing; and willful, malicious and intentional misconduct. The appellee sought dismissal of the action on the grounds of *forum non conveniens*, which was denied. The appellee then filed a complaint against the appellants in New York in which the appellee sought a declaratory judgment that the D & O policy does not cover the claims made against the appellants.[7]

On October 14, 1994, Joseph Nakash filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code. Pursuant to 11 U.S.C. § 362(a) [8], the filing of a bankruptcy petition operates as an automatic stay of the commencement or continuation of any action against the bankrupt or the enforcement of any judgment against him. Accordingly, there is no dispute that the New York action was stayed as to Joseph.[9]

After a lengthy and contentious discovery period, the trial on the appellants' claims in the Circuit Court of Kanawha County began on October 6, 1995 and proceeded for six days with the parties resting on October 17, 1995. That same day, the Supreme Court of New York granted summary judgment on behalf of the appellee in the New York action. The court reasoned, in part:

> By piercing the corporate veil it is clear that Nakash [*sic*] were acting in their own personal capacities when they committed the alleged wrongful acts. Thus, now it can be determined that Nakash did *not* act in their capacities as Directors and Officers of Jordache..... [N]o coverage exists under the general policy provisions and pursuant to Exclusion 4(k).[10] (Footnote added).

6. W.Va.Code § 33–11–4(9)(b), (c), (d), (e), and (f) (1985) state:

> (9) *Unfair claim settlement practices.*—No person shall commit or perform with such frequency as to indicate a general business practice any of the following:
> (b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
> (c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
> (d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;
> (e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;
> (f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

7. The appellants filed an answer in the New York action which raised claims of bad faith and breach of contract under New York law.

8. 11 U.S.C. § 362 (1994) is titled "Automatic Stay" and states in part:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

9. By its own terms, 11 U.S.C. § 362 stays only those actions *against* the debtor. Therefore, the automatic stay did not affect the West Virginia action.

10. Exclusion 4(k) of the D & O policy states:

> The Insurer shall not be liable to make any payment for Loss in connection with any claim or claims made against the Directors or Officers:
> (k) alleging, arising out of, based upon or attributable to any act or omission in their capacities as directors or officers of any other entity other than the Company, or by reason of their status as a Director or Officer of such other entity;
> The October 17, 1995 order of the Supreme Court of New York also states in relevant part:
> National's evidence overwhelmingly shows that Nakash [*sic*] commingled funds, disre-

■ As a result of the New York decision, the Circuit Court of Kanawha County granted the appellee's motion for summary judgment based on the doctrines of res judicata and collateral estoppel and dismissed the action with prejudice.[11] By order of November 28, 1995, the circuit court denied the appellants' motion to alter or amend judgment and for new trial and a motion for a stay.[12]

Meanwhile, back in New York, the appellants filed a motion for renewal and reargument in the Supreme Court of New York. By order dated June 26, 1996, the Supreme Court of New York refused to reconsider its original decision but stated:

If the West Virginia court held that the October order was binding on Joseph, or

garded corporate formalities, shuttled money in and out of Jordache to suit their personal needs, used employees paid by Jordache to work for other entities owned by them, and, generally, used Jordache to carry out their own personal business. No other conclusion can be reached but that plaintiff has established that Nakash personally benefitted from the fraudulent transactions set forth in the draft complaint and now claim that their actions were taken for the benefit of Jordache in order to recover under the policy. National has proven that Jordache's corporate entity was a sham.

11. Specifically, the October 30, 1995 order of the circuit court stated in part:

[T]his Court finds that the Order entered by the Supreme Court of the State of New York, Part 31, should be given full faith and credit by the Courts of this State and the doctrines of res judicata and collateral estoppel bar any further proceedings by this Court in this matter, both actions concerning the same issues and the same parties, and this Court finding that the ruling of the New York Court, even if erroneous, is final for purposes of res judicata and collateral estoppel application.

We note here that,

[u]nder Section 1, Article IV of the Constitution of the United States, the judgment or decree of a court of record of another state will be given full faith and credit in the courts of this State, unless it be clearly shown by pleading and proof that the court of such other state was without jurisdiction to render the same, or that it was procured through fraud.

Syllabus Point 1, *Johnson v. Huntington Moving & Storage, Inc.*, 160 W.Va. 796, 239 S.E.2d 128 (1977). Also, "[t]he full faith and credit clause encompasses the doctrine of collateral estoppel." 50 C.J.S. § 982, p. 587 (1997) (footnote omitted).

12. The appellants' motion to alter or amend judgment and for new trial was pursuant to Rule

had a collateral estoppel effect on him, the remedy is an application to the West Virginia court. The decision of this court could not bind Joseph, since the action had been stayed as to him.

Although the court's October order did not repeat the statement made in the August order that the action was stayed as to Joseph, this was an oversight. The stay is automatic. Any reference in the October order to the Nakash brothers collectively as including Joseph is withdrawn. The declaration that there was no coverage under the policy affected only the other defendants. The determination that Jordache was the alter ego of Avi and Ralph was not a determination that Jordache is the alter ego of Joseph.[13]

59(a) and (e) of the West Virginia Rules of Civil Procedure. Rule 59(a) and (e) (1998) (amended May 1998 supp.) states:

(a) *Grounds.*—A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

(e) *Motion to alter or amend a judgment.*—A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.

In their motion, the appellants averred, *inter alia*, that "[t]he New York decision does not apply, and therefore *res judicata* and collateral estoppel do not apply, to Joseph Nakash due to his pending bankruptcy[.]"

The appellants appealed the circuit court's denial of this motion and by order of February 5, 1997, this Court refused the appellants' petition.

13. On appeal, the New York orders of October 17, 1995 and June 26, 1996 were affirmed by the New York Supreme Court, Appellate Division, First Department at 235 A.D.2d 333, 652 N.Y.S.2d 966 (1997). The Court of Appeals of New York subsequently dismissed Joseph Nakash's motion for leave to appeal on the ground that Joseph was not a party aggrieved. The motion for leave to appeal of the other appellants was denied. *See* 90 N.Y.2d 931, 664 N.Y.S.2d 263, 686 N.E.2d 1359 (1997).

On July 1, 1996, the appellants filed a motion to vacate and for other relief from the Circuit Court of Kanawha County pursuant to Rule 60(b) [14] of the West Virginia Rules of Civil Procedure. The basis of the motion was that since the New York court's decision of June 26, 1996 stated that the October 17, 1995 ruling does not apply with regard to Joseph Nakash and expressly withdrew any reference to the Nakash brothers in the order as including Joseph, it is apparent that the October 30, 1995 order of the Circuit Court of Kanawha County dismissing the action as it relates to Joseph was based on mistake or inadvertence, or alternatively was based upon a portion of the New York court's October 17, 1995 decision which was subsequently withdrawn or vacated and is thus void.

By order of November 5, 1996, the Circuit Court of Kanawha County denied the appellant's Rule 60(b) motion. The appellants now appeal the order of November 5, 1996 to this Court.

## II.

### STANDARD OF REVIEW

■ It is well-settled that,

[a] motion to vacate a judgment made pursuant to Rule 60(b), W.Va.R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion.

Syllabus Point 5, *Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974). *See also*, Syllabus Point 1, *Jackson General Hospital v. Davis*, 195 W.Va. 74, 464 S.E.2d 593 (1995); Syllabus Point 1, *Nancy Darlene M. v. James Lee M.*, 195 W.Va. 153, 464 S.E.2d 795 (1995); *Powderidge Unit Owners v. Highland Prop.*, 196 W.Va. 692, 474 S.E.2d 872 (1996); and Syllabus Point 1, *Hartwell v.. Marquez*, 201 W.Va. 433, 498 S.E.2d 1 (1997).

This standard of review reflects the circuit court's institutional position as the forum best equipped for determining the appropriate use of Rule 60(b) to ensure that litigants who have vigorously and diligently complied with the summary judgment mandates of Rule 56 are not penalized by the action of those who choose not to comply.

*Powderidge, supra,* 196 W.Va. at 705, 474 S.E.2d at 885.

■ This Court has stated that circuit courts, when considering Rule 60(b) motions should be mindful that Rule 60(b) "is to be liberally construed for the purpose of accomplishing justice and that it was designed to facilitate the desirable legal objective that cases are to be decided on the merits." Syllabus Point 6, in part, *Toler, supra*. This is true especially, but not exclusively, in the context of default judgments. *See Cruciotti v. McNeel*, 183 W.Va. 424, 396 S.E.2d 191 (1990). Nevertheless, "[a] circuit court is not

---

14. West Virginia Rule of Civil Procedure 60(b) (1998) (amended May 1998 supp.) states:

(b) *Mistakes; Inadvertence; Excusable Neglect; Unavoidable Cause; Newly Discovered Evidence; Fraud, etc.*—On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), (3), and (6) not more than eight months after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This Rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant statutory relief in the same action to a defendant not served with a summons in that action, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, petitions for rehearing, bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

required to grant a Rule 60(b) motion unless a moving party can satisfy one of the criteria enumerated under it." *Powderidge,* 196 W.Va. at 706, 474 S.E.2d at 886.

One of the purposes of West Virginia Rule of Civil Procedure 60(b) is to provide a mechanism for instituting a collateral attack on a final judgment in a civil action *when certain enumerated extraordinary circumstances are present. When such extraordinary circumstances are absent, a collateral attack is an inappropriate means for attempting to defeat a final judgment in a civil action.*

Syllabus Point 2, *Hustead v. Ashland Oil, Inc.,* 197 W.Va. 55, 475 S.E.2d 55 (1996) (emphasis added). This Court, when reviewing circuit court rulings on Rule 60(b) motions, is careful not to substitute its discretion for that of the circuit court when the latter has not abused its discretion. *See Intercity Realty Company v. Gibson,* 154 W.Va. 369, 175 S.E.2d 452 (1970).

Where the law commits a determination to a trial judge and his discretion is exercised with judicial balance, the decision should not be overruled unless the reviewing court is actuated, not by a desire to reach a different result, but by a firm conviction that an abuse of discretion has been committed.

*Intercity,* 154 W.Va. at 377, 175 S.E.2d at 457 (citation omitted). Also, "[o]n an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Syllabus Point 2, *Perdue v. Coiner,* 156 W.Va. 467, 194 S.E.2d 657 (1973). With these considerations in mind, we now proceed to the issues before us.

## III.

### DISCUSSION

■ In their brief to this Court, it appears that the appellants base their request for relief on both Rule 60(b) and equitable grounds. First, the appellants argue that equity demands that the final judgment be-

low should not be enforced, and they cite *N.C. v. W.R.C .,* 173 W.Va. 434, 317 S.E.2d 793 (1984), as well as other cases, for support. In Syllabus Point 3 of *N.C. v. W.R.C.,* this Court stated:

In order to obtain relief from a final judgment, order or proceeding through an independent action, the independent action must contain the following elements: (1) the final judgment, order or proceeding from which relief is sought must be one that, in equity and good conscience, should not be enforced; (2) the party seeking relief should have a good defense to the cause of action upon which the final judgment, order or proceeding is based; (3) there must have been fraud, accident or mistake that prevented the party seeking relief from obtaining the benefit of his defense; (4) there must be absence of fault or negligence on the part of the party seeking relief; and (5) there must be no adequate legal remedy.

An independent action to obtain relief from a final judgment is distinct from a motion for relief pursuant to Rule 60(b). "In addition to a motion for relief from a final judgment, order or proceeding pursuant to the reasons set forth in *W.Va.R.Civ.P.* 60(b)(1) through (5), the rule specifically provides that a party may obtain relief from a final judgment, order or proceeding through an independent action." Syllabus Point 1, *N.C. v. W.R.C.* "The definition of an independent action, as contemplated by *W.Va.R.Civ .P.* 60(b), is an equitable action that does not relitigate the issues of the final judgment, order or proceeding from which relief is sought and is one that is limited to special circumstances." Syllabus Point 2, *Id.*

■ For several reasons, the appellants' reliance on equity before this Court is not valid under the facts of this case. First, the appellants' motion to vacate and for other relief from the final order below was in the nature of a Rule 60(b) motion and not an equitable independent action. Further, an element of an equitable independent action is the absence of an adequate legal remedy. In the case *sub judice,* however, the appellants brought a timely Rule 60(b) motion which constitutes an adequate legal remedy. Final-

ly, this case does not present the rare, unusual and exceptional circumstances in which resort to an equitable independent action is appropriate. *See* 11 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2868 (1995). Accordingly, we will consider only the merits of the appellants' Rule 60(b) motion.

In order to prevail on a Rule 60(b) motion, a party must satisfy one of the five criteria stated in the rule. According to the appellants, the circuit court wrongly believed that the New York order of October 17, 1995 applied to Joseph Nakash and based its judgment on this incorrect belief. They also contend that because Joseph Nakash was specifically excluded from the October 17, 1995 New York judgment, res judicata and collateral estoppel cannot apply to him. The appellants conclude that these circumstances constitute a mistake or inadvertence on the part of the circuit court under Rule 60(b)(1). Further, the appellants aver that the October 17, 1995 order of the New York court, upon which the circuit court's order was based, was vacated as to Joseph Nakash by the New York order of June 26, 1996, thus comprising grounds for relief under Rule 60(b)(5).

### What Law Governs

■ These specific contentions of the appellants concerning Rule 60(b) are summed up in the single issue of whether the circuit court properly ruled that the doctrines of res judicata and collateral estoppel preclude Joseph Nakash from continuing his action in the Circuit Court of Kanawha County. Because we are being asked to determine the effect of a New York order on a West Virginia proceeding, we must first decide what law to apply. We begin with the basic proposition that "[u]nder Article IV, Section 1, of the Constitution of the United States, a valid judgment of a court of another state is entitled to full faith and credit in the courts of this State." Syllabus Point 1, *State ex rel. Lynn v. Eddy*, 152 W.Va. 345, 163 S.E.2d 472 (1968). Further, "[b]y virtue of the full faith and credit clause of the Constitution of the

United States, a judgment of a court of another state has the same force and effect in this State as it has in the state in which it was pronounced." Syllabus Point 3, *Id.* In order to ensure that another state's judgment is given the same force and effect it would have in that state, the general rule appears to be that "[t]he validity and effect of a judgment must be determined by reference to the laws of the state where it was rendered." 50 C.J.S. § 969, p. 563. This Court utilized the general rule in *Perkins v. Hall*, 123 W.Va. 707, 17 S.E.2d 795 (1941), in determining that the force and effect of an Ohio judgment must be governed by the law of that state.

It is also true that "the law of the jurisdiction where the judgment was rendered may be determinative of the res judicata or collateral estoppel effect of a judgment." 50 C.J.S. § 969, p. 563. In *Durfee v. Duke*, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963), the United States Supreme Court held that a Nebraska judgment on an action to quiet title was properly held by a federal district court to preclude the same action in Missouri.[15] The Court stated,

> The constitutional command of full faith and credit, as implemented by Congress, requires that "judicial proceedings ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." *Full faith and credit thus generally requires every State to give to a judgment at least the res judicata effect which the judgment would be accorded in the State which rendered it.*

*Durfee*, 375 U.S. at 109, 84 S.Ct. at 244, 11 L.Ed.2d at 190 (footnote omitted and emphasis added). The Court further stated, "[i]t is not questioned that the Nebraska courts would give full *res judicata* effect to the Nebraska judgment quieting title in the petitioners." *Id.* (Footnote omitted).

This rule is also recognized by the Restatement (Second) of Conflict of Laws § 95 (Supp.1988), p. 93, which states,

---

**15.** This case arose after a river had changed course creating a dispute concerning in which state the land at issue actually was located.

What issues are determined by a valid State judgment is determined, subject to constitutional limitations, by the local law of the State where the judgment was rendered.

Further, Comment c of § 95 explains,

If the judgment is for the defendant on the merits and if under the local law of the State where the judgment was rendered the effect of a valid and final judgment in favor of the defendant on the merits is to bar the claim, the plaintiff may no longer maintain an action on the claim in any State.

Several states have adopted this approach. *See* Delaware, *Bata v. Hill,* 37 Del.Ch. 96, 106–107, 139 A.2d 159, 165 (Del.Ch.1958), *modified on other grounds, Bata v. Bata,* 39 Del.Ch. 258, 163 A.2d 493 (Del.Supr.1960), *cert. denied, Bata v. Bata,* 366 U.S. 964, 81 S.Ct. 1926, 6 L.Ed.2d 1255 (1961) ("I therefore first consider whether under New York law the New York judgment in *Bata v. Bata,* above, is res judicata and thus a bar to a determination of this action on its merits [in Delaware]."); New Jersey, *Reliance Ins. v. Armstrong W. Ind.,* 259 N.J.Super. 538, 545–546, 614 A.2d 642, 645–646 (1992), *modified on other grounds,* 265 N.J.Super. 148, 625 A.2d 601 (1993), *reversed on other grounds,* 292 N.J.Super. 365, 678 A.2d 1152 (N.J.Super.A.D.1996) (party sought a preliminary ruling that a California decision respecting insurance coverage and insurance policy terminology is binding upon a New Jersey court. The New Jersey court stated that "New Jersey recognizes that the collateral estoppel effect of a judgment is dependent upon the law of the state rendering it.... A stipulated judgment is the equivalent of a judgment after a contested trial for the purposes of res judicata or collateral estoppel." *Citing California law*); Minnesota, *McBroom v. Al–Chroma, Inc.,* 386 N.W.2d 369, 372 (Minn.App.1986) ("This Court must apply Wisconsin law to determine whether the two actions now before this court are barred by the res judicata effect of the Wisconsin judgment."); Massachusetts, *Wright Machine Corp. v. Seaman–Andwall Corp.,* 364 Mass. 683, 692, 307 N.E.2d 826, 832 (1974) ("The full faith and credit clause re-

quires us to look to Delaware law to determine how that State would treat the summary judgment its court granted to Seaman in terms of the doctrine of res judicata, so that we may give the Delaware judgment the same force and effect as it would be given there."); New York, *Peros v. Cia De Nav Mar Netumar,* 75 Misc.2d 913, 914, 349 N.Y.S.2d 926, 927 (1973) ("It is the general rule that the *res judicata* effect of a judgment is to be determined by the law of the state in which the judgment is rendered. This also applies to the Federal jurisdiction" (citations omitted).); Florida, *Andujar v. National Property and Cas. Underwriters,* 659 So.2d 1214, 1216 (Fla.App.1995) ("We agree with defendant to the extent that federal claim preclusion law governs, rather than Florida's. Whenever res judicata is asserted, the court in the second forum is bound to give the former judgment the same preclusive effect that the rendering court would give it. Indeed that general principle is so well established as to need no further elucidation."); Oklahoma, *Smith v. Shelter Mut. Ins. Co.,* 867 P.2d 1260, 1265 (Okl.1994) ("The local law of the state where the judgment is rendered determines the issues decided and whether a judgment is on the merits" (footnote omitted).); and Kansas, *Johnson Bros. Wholesale Liquor Co. v. Clemmons,* 233 Kan. 405, 661 P.2d 1242 (1983), *cert. denied,* 464 U.S. 936, 104 S.Ct. 345, 78 L.Ed.2d 311 (1983) (Validity and finality of foreign judgments are to be tested where the judgment was rendered). *See also,* Illinois, *Bulfin v. Eli Lilly & Co.,* 244 Ill.App.3d 785, 614 N.E.2d 403, 185 Ill.Dec. 269 (1993), *appeal denied,* 152 Ill.2d 555, 622 N.E.2d 1201, 190 Ill.Dec. 884 (1993); Michigan, *Jones v. State Farm Mut. Auto. Ins. Co.,* 202 Mich.App. 393, 509 N.W.2d 829 (1993), *modified on other grounds, Patterson v. Kleiman,* 447 Mich. 429, 526 N.W.2d 879 (1994); Arizona, *Ibach v. Ibach,* 123 Ariz. 507, 600 P.2d 1370 (1979); and North Carolina, *American Inst. of Marketing Systems, Inc. v. Willard Realty Co., Inc. of Raleigh,* 277 N.C. 230, 176 S.E.2d 775 (1970).

It appears, however, that this Court has never expressly adopted the rule discussed above. In *State ex rel. Lynn v. Eddy, supra,* the Court stated that judgments of other

states have the same force and effect in this State as in the states in which they were pronounced, nevertheless the Court proceeded to determine the res judicata effect of a Pennsylvania judgment by using this State's law on res judicata. In *Litten v. Peer*, 156 W.Va. 791, 197 S.E.2d 322 (1973), on the other hand, an action filed in federal district court was dismissed against the plaintiff for want of prosecution pursuant to Federal Rule of Civil Procedure 41(b). The plaintiff subsequently instituted his action in the Circuit Court of Pendleton County. On appeal, the issue before this Court was whether the disposition of the plaintiff's case in federal court was res judicata so as to bar the Pendleton County action. This Court based its analysis on the maxim that "the effect of a judgment as res judicata is 'substantive' and other jurisdictions must regard it as being as broad and conclusive as it would be in the jurisdiction in which it was rendered." *Litten*, 156 W.Va. at 796, 197 S.E.2d at 326 (citation omitted). Applying this rule, the Court looked to the language of Rule 41(b) and federal case law in determining whether the dismissal judgment was final for res judicata purposes. These cases provide guidance on the issue currently before us.

 In addition, whether New York law or West Virginia law is utilized determines the result in this case. The circuit court ruled that the Kanawha County action was rendered res judicata by the October 17, 1995 order of the New York court at a time when the October 17, 1995 order was being appealed or the time limits fixed for perfecting an appeal had not expired. Consequently, it appears that the order would not have been final for res judicata and collateral estoppel purposes under West Virginia law. Although this Court has never expressly held that a judgment pending appeal is not final for res judicata and collateral estoppel purposes, it intimated as much in *Flanagan v. Gregory & Poole, Inc.*, 136 W.Va. 554, 67 S.E.2d 865 (1951). In *Flanagan*, a defendant asserted that the plaintiffs were estopped from bringing an action where the plaintiffs had recovered in a first action which was still pending on a writ of error. The Court noted that if the first action was pending on a writ of error, "the judgment in the first action has

no finality and would not estop plaintiffs." *Flanagan*, 136 W.Va. at 565, 67 S.E.2d at 873. As will be discussed *infra*, the New York law on this issue is different. Because of this difference, we are compelled to apply New York law in deciding the preclusive effect, if any, of the New York order. As noted above, the full faith and credit clause generally requires the courts of this State to give the New York judgment at least the res judicata effect which it would be accorded by New York courts.

### The New York Law of Res Judicata and Collateral Estoppel

 Under New York law, the essential elements of collateral estoppel, or issue preclusion, are: "[f]irst, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." *Juan C. v. Cortines*, 89 N.Y.2d 659, 667, 679 N.E.2d 1061, 1065, 657 N.Y.S.2d 581, 585 (1997) (citation omitted). Res judicata, or claim preclusion, on the other hand, "involves the question of whether a plaintiff's present claim, as distinguished from discrete issues previously litigated, has been extinguished by a final adjudication in a prior proceeding in which the parties, or those in privity with them, were the same as in the action presently before the court." *Kret by Kret v. Brookdale Hosp. Medical Center*, 93 A.D.2d 449, 454, 462 N.Y.S.2d 896, 899 (1983), *aff'd*, *Kret v. Brookdale Hosp. Medical Center*, 61 N.Y.2d 861, 462 N.E.2d 147, 473 N.Y.S.2d 970 (1984). Concerning the distinction between res judicata and collateral estoppel, it has been stated:

Collateral estoppel is a narrower application of *res judicata.* Where a second lawsuit between the same parties, or those who stand in their place, involves a different cause of action, the judgment in the first action estops relitigation of only those matters that were litigated and the subject of a final determination or verdict. In other words, the effect of the prior judgment is limited to specific issues in the

second action and does not dispose of the entire suit.

*United States v. Seaboard Surety Co.,* 622 F.Supp. 882, 885 (D.C.N.Y.1985).

### Element # 1: Identity of Claims

■■■ We find that the first element of res judicata, whether there is identity of claims in the first and second action, is satisfied in the instant case. In the New York action, the appellee brought a declaratory action seeking a judgment,

> that "Directors and Officers Insurance and Company Reimbursement Policy" No. 436 29 15 (the "D & O Policy"), issued by Plaintiff National Union and insuring Jordache Enterprises, Inc., its subsidiaries and their directors and officers, does not provide coverage with respect to certain claims made against the Defendants and settlement of those claims.

Likewise, in the West Virginia action, the appellants sought, *inter alia,*

> a declaration that a director's and officer's liability insurance policy between the Plaintiffs and Defendant National Union Fire Insurance Company of Pittsburgh, Pa.... obligates National Union to pay for the settlement of claims against the Plaintiffs by Retail Acquisition Corp... and the defense costs incurred by Plaintiffs.

It is clear that these declaratory actions are identical. They concern the same set of facts in that both arise from the appellants' involvement and subsequent settlement with RAC. Also, both actions turn on the interpretation of the same insurance policy. Finally, the same evidence would support both actions.

### Element # 2: Final Adjudication In First Action

The second question we must answer is whether there was a final adjudication in the New York action. The appellants argue on this point that because Joseph Nakash was not a party to the New York action, there was no litigation of the issues concerning him. They also assert that other courts, in related situations, have held that res judicata or collateral estoppel will not bind one defendant, at least in certain circumstances, with regard to issues litigated between a plaintiff and another defendant.

■■■ It is undisputed that Joseph was not a party to the New York action and that the New York order was not final as to him. It is also undisputed, however, that the order was a final adjudication as to Jordache, Avi and Ralph Nakash. Under New York law, "a 'final' order or judgment is one that disposes of all of the causes of action between the parties in the action or proceeding and leaves nothing for further judicial action apart from mere ministerial matters." *Burke v. Crosson,* 85 N.Y.2d 10, 15, 647 N.E.2d 736, 739, 623 N.Y.S.2d 524, 527 (1995) (citation and footnote omitted). The October 17, 1995 order meets this criteria in that it disposed of all the causes of action between Jordache, Avi Nakash and Ralph Nakash, and National Union. Further, under New York law, the granting of summary judgment and dismissal of the complaint is an adjudication on the merits which is subject to res judicata effect. *Murray v. National Broadcasting Co.,* 178 A.D.2d 157, 576 N.Y.S.2d 578 (1991). Finally, "[t]he rule in New York, unlike that in other jurisdictions, is that the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding." *Matter of Amica Mut. Ins. Co.,* 85 A.D.2d 727, 728, 445 N.Y.S.2d 820, 822 (1981) (citations omitted). Therefore, we find that the October 17, 1995 order is a final adjudication on the merits which is entitled to res judicata and collateral estoppel.

### Element # 3: Same Parties Or Those In Privity

The fact that Joseph was not a party to the New York action does not settle the issue of preclusion because res judicata applies not only to parties to a prior proceeding in which there was a final adjudication but also to those in privity with them. We must decide, therefore, whether the element of privity is satisfied in this case. The Court of Appeals of New York has stated:

> In general, "a nonparty to a prior litigation may be collaterally estopped by a

determination in that litigation by having a relationship with a party to the prior litigation such that his own rights or obligations in the subsequent proceeding are conditioned in one way or another on, or derivative of, the rights of the party to the prior litigation." This constitutes a form of privity; however, "the term privity does not have a technical and well-defined meaning." Rather, it "is an amorphous concept not easy of application," and "includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action." Importantly, "all the circumstances must be considered from which one may infer whether or not there was participation amounting to a sharing in control of the litigation."

*Juan,* 89 N.Y.2d at 667–68, 679 N.E.2d at 1065, 657 N.Y.S.2d at 585. *See also, Green v. Santa Fe Industries, Inc.,* 70 N.Y.2d 244, 253, 514 N.E.2d 105, 108, 519 N.Y.S.2d 793, 796 (1987) ("the connection between the parties must be such that the interests of the nonparty can be said to have been represented in the prior proceeding" (citation omitted).). These characterizations are in accord with the statements of commentators on the issue of privity.

There is no generally prevailing definition of privity which can be automatically applied to all cases involving res judicata and collateral estoppel.

\* \* \*

In determining whether privity exists, courts generally employ a functional analysis, which entails a careful examination of the circumstances of the case and the rights and interests of the parties to be held in privity. Thus, the question of who is a privy is a factual one requiring a case-by-case examination.

\* \* \*

In general, it may be said that … privity involves a person so identified in interest with another that he represents the same legal right.

47 Am.Jur.2d *Judgments* § 663, pp. 84–86 (1995) (footnotes omitted). One court has stated that,

[a] privy, in the context of collateral estoppel, is one so related by identity of interest with the party to the judgment that such party represented the same legal right. Parties are in privity for collateral estoppel purposes if the interests of the non-party are so closely related to the interests of the party, that the non-party can be fairly considered to have had his day in court.

*Missouri Mexican Products, Inc. v. Dunafon,* 873 S.W.2d 282, 286 (Mo.App.1994) (citations omitted).

There are specific rules governing when corporations and their officers and shareholders are in privity. Generally, corporations and their officers and shareholders are not in privity for res judicata and collateral estoppel purposes. *See* 47 Am.Jur.2d *Judgments* § 696 (1995); and *Patton v. Dumpson,* 498 F.Supp. 933, 943 (1980) ("identity of interest is not presumed between private corporations and their officers."). This rule, however,

does not apply to closely-held corporations and their officers and shareholders, such that a close corporation is generally considered to be in privity with its dominant officer and shareholder, especially where the nonparty officer and shareholder actively participated in the prior action against the corporation, unless his or her interest and that of the corporation are so different that the nonparty should have an opportunity to relitigate the issue.

47 Am.Jur.2d *Judgments* § 696, at pp. 160–161 (footnotes omitted). *See also* 50 C.J.S. *Judgment* § 867 (1997); Restatement (Second) of Judgments § 59 (1982).[16] Comment

**16.** 50 C.J.S. *Judgment* § 867, pp. 441–442 (1997) states in part:

Generally, a corporation is in privity with its sole shareholder for collateral estoppel purposes. A ruling adverse to a controlling person of a corporation precludes the corporation

from litigating that claim in a subsequent action. A judgment against a corporation has a preclusive effect upon its sole owner as to issues decided in a prior litigation where the owner actively participated in the prior litiga-

*e* of the Restatement (Second) of Judgments explains, in part, why a judgment rendered against a closely held corporation may be binding on the shareholders and vice versa.

When the corporation is closely held, however, interests of the corporation's management and stockholders and the corporation itself generally fully coincide. By definition, the stockholders are few in number and either themselves constitute the management or have direct personal control over it. In many respects, the enterprise is a proprietorship or partnership conducted in corporate form. If the corporate form is ignored by the corporation's proprietors the corporation may be treated as their alter ego, with the consequence that they are personally liable for the corporation's obligations. When the form is adequately adhered to, the fact that interests of a closely held corporation and its proprietors are usually identical does not efface the separate legal identity of the corporation for such purposes as taxation, regulation, and the limitation of stockholders' liability to their investment in the corporation. For the purpose of affording opportunity for a day in court on issues contested in litigation, however, there is no good reason why a closely held corporation and its owners should be ordinarily regarded as legally distinct. On the contrary, it may be presumed that their interests coincide and that one opportunity to litigate issues that concern them in common should sufficiently protect both.

Several courts have accepted these principles. *See, e.g., Aetna Casualty & Surety Co.* *of Hartford v. Kerr–McGee Chemical Corp.,* 875 F.2d 1252 (7th Cir.1989); *Red Carpet Corp. v. Roberts,* 443 So.2d 377 (Fla.App. 1983), *rev. denied sub nom. Hatcher v. Roberts,* 488 So.2d 68 (Fla.1986); *Spickler v. Dube,* 644 A.2d 465 (Me.1994); *Missouri Mexican Products, Inc., supra; Joe's Pizza v. Aetna Life & Cas. Co.,* 236 Conn. 863, 675 A.2d 441 (1996); *Grisanzio v. Bilka,* 158 Ill.App.3d 821, 511 N.E.2d 762, 110 Ill.Dec. 585 (1987); *Hofsommer v. Hofsommer Excavating, Inc.,* 488 N.W.2d 380 (N.D.1992); *Horwitz v. Alloy Automotive Company,* 992 F.2d 100 (7th Cir.1993); and *Marine Midland Bank v.. Slyman,* 995 F.2d 362 (2nd Cir.1993).

New York courts have likewise recognized that, "under appropriate circumstances, a major shareholder of a closely held corporation will be bound by a judgment rendered in litigation against the corporation." *Delford Industries v. Dept. of Env. Cons.,* 171 A.D.2d 941, 943, 566 N.Y.S.2d 984, 986 (1991) (citations omitted). Such appropriate circumstances have been found where the nonparty participated in or controlled the previous litigation on behalf of the corporation. *See In Re Teltronics Services,* 762 F.2d 185, 191 (2d.Cir.1985) ("If a stockholder, officer or director of a corporation controls an action brought on its behalf in furtherance of his own interests, he is bound by the result of that action" (citation omitted).); and *Eagle Transport Ltd., Inc. v. O'Connor,* 470 F.Supp. 731, 733 (S.D.N.Y.1979) ("A determination made against a corporation will be binding on a stockholder, officer or director

tion, unless his interests are different from those of the corporation.

If a corporation is closely held, a judgment in a shareholder's action is conclusive on the corporation except when relitigation is necessary to protect the interest of another owner or a creditor of the corporation. When the owners of a closely held corporation participate at trial, it may be presumed that their interests coincide with the corporation's interests and that one opportunity to litigate interests that concern them in common should sufficiently protect both. (Footnotes omitted).

Restatement (Second) of Judgments § 59 (1982) states in part:

(3) If the corporation is closely held, in that one or a few persons hold substantially the entire ownership in it, the judgment in an action by or against the corporation or the holder of ownership in it is conclusive upon the other of them as to issues determined therein as follows:

(a) The judgment in an action by or against the corporation is conclusive upon the holder of its ownership if he actively participated in the action on behalf of the corporation, unless his interests and those of the corporation are so different that he should have opportunity to relitigate the issue; and

(b) The judgment in an action by or against the holder of ownership in the corporation is conclusive upon the corporation except when relitigation of the issue is justified in order to protect the interest of another owner or a creditor of the corporation.

in a subsequent proceeding if the individual controlled the earlier action in the furtherance of his own interests."). In the instant case, it is not clear from the record to what extent, if any, Joseph participated in or controlled the New York action. We cannot conclude, therefore, that Joseph was in privity with the parties to the New York action based upon this factor.

However, New York courts have also described privity as " 'mutual or successive relationships to the same rights of property.' 'The ground ... upon which persons standing in [privity] to the litigating party are bound by the proceedings to which he was a party is that they are identified with him in interest.' " *In re Shea's Will*, 309 N.Y. 605, 617, 132 N.E.2d 864, 868 (1956) (citations omitted). A case which illustrates the application of this definition of privity is *Bankers Trust Co. v. Rhoades*, 108 B.R. 423 (S.D.N.Y. 1989). That case concerned BAC, a corporation wholly owned by two shareholders. A bankruptcy court originally confirmed BAC's Chapter 11 plan but revoked the confirmation after ruling that BAC had committed bankruptcy fraud by concealing its ownership interest in another corporation and providing misleading information to its creditors and the court throughout the Chapter 11 proceedings. Bankers, BAC's largest creditor, subsequently brought a RICO action against BAC, Milton Braten and Herman Soifer, who owned 55% and 45% respectively of BAC's stock, as well as Daniel Rhoades, an officer of BAC and its counsel during the revocation proceeding. Bankers argued that Braten, Soifer and Rhoades were collaterally estopped from relitigating the issue whether BAC perpetrated bankruptcy fraud.

In its discussion of whether Braten, Soifer and Rhoades should be bound by the initial finding on the issue of fraud, the court first determined that Rhoades exercised insufficient control over the first proceeding to exercise collateral estoppel on that basis. The court next examined the identity of interests of the defendants and explained:

"The question whether a party's interests in a case are virtually representative of the interest of a nonparty is one of fact for the trial court." The privity determi-

nation depends on whether, under the circumstances, the interests of the nonparty were adequately represented in the prior proceeding.... [T]he theory underlying this determination is that "the party bound is in substance the one whose interests were at stake in the prior litigation."

*Bankers Trust Co.*, 108 B.R. at 428. The court found sufficient evidence of Braten's control over the previous litigation to bind him to the prior judgment. Concerning Soifer, the court concluded:

As the only other shareholder of BAC, Soifer could be deemed to have participated in controlling the litigation in the revocation proceeding. While Bankers has not provided this Court with examples of Soifer's "apparent day-to-day leadership role in the prior litigation," Soifer was BAC's only other shareholder, and he provided this Court with no specific evidence to rebut the highly plausible inference that he shared control of the proceedings.

*In any event, it is clear that BAC and Soifer, one of its principal shareholders, had a substantial identity of interest in avoiding a finding of bankruptcy fraud. Besides the possibility of losing his investment, future litigation against Soifer was foreseeable given the previous amount of litigation between the parties and their hostile relationship. Because Soifer and BAC shared an identity of interest in the revocation proceeding, Soifer is bound by the bankruptcy court's determination of bankruptcy fraud .*

*Id.*, 108 B.R. at 429 (emphasis added) (citations omitted).

We conclude from the foregoing that under New York law, privity for res judicata and collateral estoppel purposes is a broad concept requiring courts to carefully consider all the circumstances of a given case in order to determine whether a nonparty actively participated in or controlled the first litigation or had such an identity of interest with a party to the first litigation that his interests were adequately represented. Applying this rule to the present set of facts, we find that Joseph Nakash was in privity with Jor-

dache [17] and Avi and Ralph Nakash in the New York action. Joseph testified in an affidavit in the West Virginia action that "my brothers and I, we are closely held corporations, we are very close corporations." The Nakash brothers are alleged to have committed the same conduct in their dealings with RAC so that the determination of policy coverage of the conduct of one brother applies to the other brothers also. Further, there was an identity of interest between Joseph and his brothers in that they all sought a declaration of coverage under the D & O policy and the benefit of its proceeds. The appellants have directed this Court's attention to no facts, save the automatic stay, that severs Joseph's conduct and interests from those of his brothers for res judicata and collateral estoppel purposes. We conclude, therefore, that Joseph had such an identity of interest with Jordache and his brothers in the New York action that his interests were adequately represented.

The appellants contend, however, that res judicata and collateral estoppel cannot be asserted against Joseph Nakash as someone in privity with a party to the New York action because the June 26, 1996 order specifically states that Joseph Nakash is not bound by the October 17, 1995 ruling and implies that there is no collateral estoppel effect. We disagree. Instead, we read the June 26, 1996 order as merely reiterating the fact, stated in a previous order, that Joseph Nakash was not bound *as a party* by the October 17, 1995 order because of the automatic stay. We do not believe the New York court was making a determination as to whether privity exists for collateral estoppel purposes when an automatic stay prevents participation as a party to a previous action. This interpretation is in accord with the brevity of the order. The order mentions collateral estoppel but does not discuss its applicability to the instant facts nor its operation when an automatic stay is in place. Instead, the order simply reiterates that Joseph was under an automatic stay so that the October 17, 1995 order did not apply to him. The more sensible reading, therefore, is that

the order clarifies for the Circuit Court of Kanawha County that Joseph Nakash was not an active party to the New York action and could not be precluded from continuing the West Virginia action on that basis.

In addition, the appellants contend that the operation of res judicata or collateral estoppel would constitute an impermissible "end-run" around the automatic stay. In support, the appellants cite *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 431 (2nd Cir.1987), *cert. denied, sub nom., Rockefeller Group, Inc., v. 48th Street Steakhouse, Inc.*, 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988) (citation omitted), which states that "[i]f action taken against the nonbankrupt party would inevitably have an adverse impact on property of the bankruptcy estate, then such action should be barred by the automatic stay." *Also citing In re Minoco Group of Companies, Ltd.*, 799 F.2d 517 (9th Cir.1986). Further, the appellants assert that courts recently have held that whether a civil proceeding is related to a bankruptcy proceeding for jurisdictional purposes is based upon whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. *Citing In re Celotex Corp.*, 124 F.3d 619 (4th Cir.1997). Finally, the appellants aver that courts throughout the United States have expanded the automatic stay to nondebtor third parties, in insurance coverage, tort or other litigations where such litigations could potentially have an adverse impact on the debtor's estate. *Citing, inter alia, In re Circle K Corp.*, 121 B.R. 257 (Bankr.D.Ariz. 1990). The appellants conclude from this that if courts have expanded the automatic stay to co-defendants, or otherwise prevented actions against third parties, when necessary to preserve a bankrupt's estate, there can be no doubt that attempting to apply principles of res judicata or collateral estoppel to a bankrupt, based on a theory that these principles also apply to persons in privity with a party, is equally in violation of the automatic stay.

---

**17.** Jordache was actually a nominal party in the New York action in that it would only be indemnified under the D & O policy if, and to the

extent, it indemnified the directors or officers for a loss arising from the alleged wrongful acts.

The cases relied upon by the appellants are inapposite to the present facts. Those cases refer to instances where trial courts have expanded automatic stays to cover non-debtor parties when considered necessary to protect the debtor party's estate. In *Terry v. Chauffeurs, Team. & Helpers, Local 391*, 81 B.R. 394, 395 (M.D.N.C.1987), the court addressed the issue under what circumstances should an automatic stay operate to put on hold pending litigation against the debtor's co-defendants. The court explained:

> In the usual case, litigation against solvent co-debtors and joint tortfeasors may proceed without the participation of the bankrupt debtor. This rule applies under either the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362, or the inherent discretionary power of a court to manage its docket.
>
> There are circumstances, however, in which a stay of pending proceedings as to co-defendants of a bankrupt debtor is appropriate.... [I]n cases involving defendants whose liability was contingent on the liability of a debtor in bankruptcy, or in cases involving a defendant indemnified by a debtor, courts have stayed proceedings against those nonbankrupt defendants on the grounds that continuing in the absence of the debtor would subject the defendants to potentially inconsistent judgments or would effectively extinguish the debtor's indemnification obligation. (Citation omitted).

The court in *Terry* concluded that "the granting of a stay [to co-defendants] would be the unusual circumstance, done only after balancing the competing interests and after a 'clear case of hardship or inequity has been shown.'" *Terry*, 81 B.R. at 396 (citation omitted). It is clear, therefore, that Joseph could have moved for the New York court to expand the automatic stay to the defendants in that action or to enjoin further litigation. This he did not do. Instead, he joined in the filing of a counterclaim in the New York action, remained silent, and apparently waited for the outcome. Only after the New York court issued its final judgment which

was adverse to his interests did Joseph seek relief. Under these circumstances, we simply are not compelled by the appellants' argument on this issue. Accordingly, we find that Joseph was in privity with his brothers in the New York action.

### The Effect Of An Automatic Stay On The Operation Of Res Judicata And Collateral Estoppel

We have found thus far that the elements of both res judicata and collateral estoppel are satisfied in this case.[18] There is an identity of claims in the New York and West Virginia actions, there was a final adjudication in the New York action as to Jordache, Avi, and Ralph Nakash, and Joseph was in privity with his brothers in the New York action. The question remains, however, what effect the automatic stay has on the operation of res judicata and collateral estoppel. Our research has failed to disclose any New York cases that address the issue whether a debtor party who is automatically stayed from participating in a previous action in which there was a final judgment as to his co-defendants is precluded by res judicata or collateral estoppel from relitigating the same claims or issues in a subsequent proceeding. Among other courts there is a split of opinion on this issue. In *Terry, supra,* the court reasoned:

> As for whether McLean would be collaterally estopped from later litigating issues decided in this case while the automatic stay keeps it an inactive litigator, it would seem the same policy behind the stay that prevents claims from being decided against a debtor *directly,* while in bankruptcy, should also prevent those claims from being decided against it *indirectly,* by means of suit against a "virtual representative," *i.e.,* one whose interests are intimately aligned with the debtor's, and who still adequately represent those interests.

*Terry*, 81 B.R. at 396, fn. 1 (citations omitted). Likewise in *In re Replogle*, 929 F.2d 836, 837 fn. 1 (1st Cir.1991), the issue is addressed briefly in a footnote where the court states, "Although Replogle was a party

---

**18.** Although our discussion focuses on the applicability of res judicata under these circumstances, we find that both doctrines have the same effect in this case.

to the foreclosure action, and the bankruptcy judge had notice, the automatic stay issued in the Chapter 13 proceedings, 11 U.S.C. § 362, meant that the New York decision was not res judicata as to Replogle." In *Hallisey v. Deca Corp.*, 140 N.H. 443, 445, 667 A.2d 343, 344 (1995), the court stated:

> The record suggests that the defendant remained a party to the action against DeCarolis. The court did not proceed with the claim against the defendant corporation once it had initiated bankruptcy proceedings, however, because of the automatic stay a bankruptcy filing provides. *See* 11 U.S.C. § 362(a)(1) (1994); *In re Replogle*, 929 F.2d 836, 837 n. 1 (1st Cir.1991) (automatic stay meant that foreclosure decision was not res judicata as to bankrupt who remained a party). Consequently, no final judgment against the corporation could have been entered upon which res judicata could be grounded. *Cf. Germain v. Germain*, 137 N.H. 82, 84, 623 A.2d 760, 761 (1993) (where judgment entered with respect to some but not all parties, appeal of order is generally interlocutory); *Petition of Donovan d/b/a Donovan Group Home*, 137 N.H. 78, 81, 623 A.2d 1322, 1324 (1993) (res judicata improper where no final judgment because appeal pending).

Other courts, however, have reached the opposite result. In *In Re K.G.L. Contracting Services, Inc.*, 52 B.R. 235 (Bankr. S.D.Fla.1985), the bankruptcy court for the Southern District of Florida held, without comment, that a debtor in bankruptcy who was a nonactive litigant in a previous proceeding due to an automatic stay was in privy with its co-defendants and therefore bound by the principle of res judicata. The case of *In Re Regal Const. Co. Inc.*, 28 B.R. 413 (Bankr.D.Md.1983) is instructive because of the similarity of its facts to the instant case. In *Regal*, Meade Concrete Pipe Co. filed a civil suit against Regal Construction Company, Inc. ("Regal") and its surety, Fidelity and Deposit Company to recover payment of monies due to Meade. Regal subsequently filed a counterclaim against Meade. Soon thereafter, Regal filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Accordingly, Meade's claim against Regal was stayed. Regal did not proceed with its counterclaim nor did it seek to have the stay lifted as to Meade's claim. The case proceeded to trial solely upon the complaint against Regal's surety and resulted in a judgment for the full amount of damages claimed by Meade. Subsequently, Regal instituted a proceeding against Meade to recover money damages from Meade for an alleged breach of a contract. The abandoned counterclaim in the first proceeding and Regal's complaint in the second proceeding presented substantially the same issues. One of the questions presented to the bankruptcy court was whether the application of res judicata or collateral estoppel to the second action is contrary to the policies underlying the automatic stay.

The bankruptcy court answered this question in the negative and explained that this issue,

> must be examined in the light of the facts of this case and not as an independent proposition of law. After the filing of the Chapter 11 petition and prior to the trial of the District of Columbia action between Regal's surety and Meade, Regal filed this proceeding. In short, Regal availed itself of the stay and then filed its action against Meade. Its employees participated in the District of Columbia trial. Had its surety been successful, Regal need go no further. When its surety lost, Regal claimed "it was deprived of a full and fair opportunity to be heard on any issues in the District of Columbia's suit."
>
> If Regal sustained any injury from remaining on the sidelines in the District of Columbia and filing this action instead, that injury was self-inflicted. The statements of absence of fundamental fairness and countervailing policy are hollow in the mouth of Regal. It could have litigated all issues in one of two forums. When it withdrew to measure the result obtained by its surety and refile its own action cloaked in the protection of this court, it ran the risk of precisely what took place in this matter.

*In Re Regal Const. Co., Inc.*, 28 B.R. at 416. The court concluded that "Regal's interests were so closely aligned with those of its

surety that it was fairly represented. It should be bound by the judgment." *Id.*, 28 B.R. at 417 (citation omitted).

After careful consideration, we adopt the rule of the court in *In Re Regal Const. Co., Inc.* because we find it well-reasoned. We also believe that its flexible, case-by-case approach promotes fairness. This is in contrast to the narrowness and rigidity of the contrary rule. Also, in two of the three cases, cited above, in which the contrary rule is utilized, it is applied without explanation. In the third case, the stated reasons for the rule were the nonfinality of the order due to one party's automatic stay and a pending appeal. As explained previously, this rationale is not applicable to the case *sub judice.* Accordingly, we hold that a debtor in bankruptcy who is a party to an action but whose participation in the action is automatically stayed by the provisions of 11 U.S.C. § 362 may be precluded by the principles of res judicata and collateral estoppel from relitigating the same claims or issues of which there was a final adjudication as to his codefendants, in a subsequent action.

To summarize, we find that under New York law the elements of both res judicata and collateral estoppel are satisfied in this case. There are identity of claims, a final adjudication on the merits, and privity between Joseph Nakash and his co-defendants in the New York action so that he had a full and fair opportunity to contest the prior determination. Moreover, we find that the automatic stay as to Joseph does not prevent him from being precluded from relitigating the claims or issues adjudicated in the New York action. We conclude, therefore, that the circuit court did not err in ruling that Joseph cannot continue litigating the declaratory judgment action in West Virginia.

■ Accordingly, we find that the circuit court did not abuse its discretion in denying the appellants' Rule 60(b) motion. This Court presumes the correctness of the circuit court's judgment, and the appellants have failed to rebut that presumption. Specifically, there is no showing that the circuit court based its October 30, 1995 order on a mistaken belief as to Joseph Nakash's status in the New York proceeding. Also, in view of our finding on the issue of privity, whether the October 17, 1995 New York order was vacated as to Joseph is not of consequence. The circuit court's rationale for finding that Joseph is precluded from continuing with the West Virginia litigation due to res judicata and collateral estoppel is not clear from its order. However, "[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syllabus Point 3, *Barnett v.. Wolfolk,* 149 W.Va. 246, 140 S.E.2d 466 (1965). Consequently, we find the appellants' contentions regarding the circuit court's denial of the Rule 60(b) motion to be without merit. Accordingly, we affirm the circuit court's denial of the appellants' Rule 60(b) motion as it relates to the appellants' declaratory judgment action in West Virginia.

### Additional Causes Of Action In The West Virginia Action

■ In addition to the declaratory judgment action, however, the appellants brought several other claims in their West Virginia complaint. They also allege breach of contract, statutory bad faith or unfair trade practices, common law bad faith, and an intentional tort claim. These additional claims, with the exception of the breach of contract claim, arise from West Virginia law and could not have been brought in New York. Obviously, adjudication as to the declaratory judgment action in New York also extinguishes the breach of contract claim because there is now no underlying contractual duty on which to base such a claim. We find, further, that the determination that there is no coverage under the D & O policy extinguishes the common law bad faith and intentional tort claims as well. Our case law is clear that in order for a policyholder to bring a common law bad faith claim against his insurer, according to *Hayseeds, Inc. v. State Farm Fire & Cas.,* 177 W.Va. 323, 352 S.E.2d 73 (1986) and its progeny, the policyholder must first substantially prevail against his insurer on the underlying contract action.

*See also Shamblin v. Nationwide Mut. Ins. Co.*, 183 W.Va. 585, 396 S.E.2d 766 (1990) (concerning the insurer's duty of good faith and fair dealing to an insured who is a tort-feasor); and *Marshall v. Saseen*, 192 W.Va. 94, 450 S.E.2d 791 (1994) (concerning uninsured and underinsured motorist coverage).

The premise underlying *Hayseeds* was that the insurer had contractually promised the insured such coverage. Consequently, the insurer had a duty to settle with its insured on a claim for which the insured was legally entitled to recover. If the insurer declined to settle, and the insured was required to sue and then substantially prevailed, the insurer was liable for not just the verdict but also for attorney fees and incidental damages.

*Marshall*, 192 W.Va. at 100, 450 S.E.2d at 797. Because of the New York court's determination that the appellee owes no contractual obligation to the appellants under the D & O policy, the appellants cannot substantially prevail on an underlying contract action against the appellee. Therefore, the appellee cannot be liable to the appellants for attorney fees and incidental damages in a common law bad faith claim.

■ The appellants' intentional tort claim must fail for the same reason. A clear predicate to recovering punitive damages in a common law bad faith action wherein the policyholder alleges that the insurer knew the policyholder's claim was proper, but willfully, maliciously and intentionally denied the claim, is that the policyholder substantially prevail on the underlying contract claim.[19] *See McCormick v. Allstate Ins. Co.*, 197 W.Va. 415, 426, 475 S.E.2d 507, 518 (1996) ("a clear predicate to recovering punitive damages in a *Hayseeds* claim is that the plaintiff 'substantially prevail' on his underlying claim"). Again, the appellants are now unable to prevail on the underlying contract action. Therefore, we find that the circuit

court did not err in ruling that Jordache, Avi Nakash, Ralph Nakash and Joseph Nakash are precluded by the principles of res judicata and collateral estoppel from litigating the breach of contract, common law bad faith and intentional tort claims in West Virginia. Accordingly, we affirm the circuit court's denial of the appellants' Rule 60(b) motion concerning their breach of contract, common law bad faith, and intentional tort claims.

■ We note, however, that the appellants also brought a claim for the violation of the West Virginia Unfair Trade Practices Act, W.Va.Code § 33–11–4(9)(b), (c), (d), (e), and (f). This is not a claim that could have been brought in the New York action. It is also not a claim that rests on substantially prevailing on the underlying contract action.

The conditions and predicate for bringing a case under *Jenkins v. J.C. Penney Casualty Insurance Company*, 167 W.Va. 597, 280 S.E.2d 252 (1981), are wholly different from those necessary for bringing an underlying contract action or for bringing an action under *Hayseeds, Inc. v. State Farm Fire & Casualty*, 177 W.Va. 323, 352 S.E.2d 73 (1986). Whereas under *Hayseeds* it is necessary that a policyholder substantially prevail on an underlying contract action before he may recover enhanced damages, under *Jenkins* there is no requirement that one substantially prevail; it is required that liability and damages be settled previously or in the course of the *Jenkins* litigation. *Jenkins* instead predicates entitlement to relief solely upon violation of the West Virginia Unfair Trade Practices Act, W.Va.Code § 33–11–4(9), where such violation arises from a "general business practice" on the part of the insurer.

Syllabus Point 9, *McCormick, supra.* Because the appellants' statutory bad faith settlement claim was not disposed of in the New York adjudication, we find that the circuit

---

19. We note that while the appellants are precluded from moving forward on their intentional tort claim, they are not precluded from recovering punitive damages on their statutory bad faith settlement claim. In Count Five of their complaint filed in the Circuit Court of Kanawha County, the appellants allege that the "[d]efendant knew that the Plaintiffs' claim was proper,

but nevertheless acted willfully, maliciously and intentionally by failing to acknowledge and pay Plaintiffs' claim." As noted above, this claim is extinguished. However, this Court has stated that, under the appropriate circumstances, plaintiffs can recover punitive damages for violations under W.Va.Code § 33–11–4(9).

court erred in ruling that the appellants are precluded from bringing such an action by the principles of res judicata and collateral estoppel. Accordingly, we reverse the circuit court's denial of the appellants' Rule 60(b) motion as to the single statutory bad faith settlement claim.

## IV.

## CONCLUSION

In conclusion, we find that the elements of res judicata and collateral estoppel are satisfied in this case so as to bar Joseph Nakash and the other appellants from continuing with their declaratory action in the Circuit Court of Kanawha County. Because of the New York judgment on the declaratory action that the appellee has no duty under the D & O policy to indemnify the appellants, they are unable to prevail on a contract action against the appellee. Therefore, the appellants' common law bad faith and intentional tort claims are extinguished. Accordingly, we find that the circuit court did not abuse its discretion in denying the appellants' Rule 60(b) motion as to these claims, and we affirm the order of the circuit court as to these claims. However, the appellants' statutory bad faith claim, which does not depend on prevailing on the underlying breach of contract action, remains viable. We find, therefore, that the circuit court abused its discretion in denying the appellants' Rule 60(b) motion as to this claim, and we reverse the order of the circuit court on this single claim. Accordingly, the order of the circuit court is affirmed in part and reversed in part.

Affirmed in part and reversed in part.

DAVIS, Chief Justice, concurring in part, and dissenting in part:

This case was appealed by Jordache Enterprises, Inc. and its owners, Joseph Nakash, Ralph Nakash and Avi Nakash (hereinafter referred to as "Jordache"). Jordache filed an action against the appellee, National Union Fire Insurance Company (hereinafter referred to as "National"), as a result of National's refusal to provide coverage for Jordache in other litigation. The action included a claim for bad faith. The circuit court subsequently granted summary judgment to National. The majority opinion held that because of a previous ruling by a New York trial court on the issue of indemnification, the circuit court correctly granted summary judgment against all the Nakashes, except with respect to their statutory bad faith claim. I concur with the majority opinion insofar as it finds that the New York decision barred the claims of Jordache Enterprises, Inc., Ralph Nakash and Avi Nakash. However, I dissent with respect to two holdings made by the majority opinion. First, the majority opinion incorrectly found that the New York decision precluded all of Joseph Nakash's claims against National other than his statutory bad faith claim. I believe the New York decision did not preclude any of Joseph Nakash's claims due to the operation of the automatic bankruptcy stay. Second, I dissent from the majority's decision finding that summary judgment was improper on the statutory bad faith claim of Jordache Enterprises, Inc., Ralph Nakash and Avi Nakash as the bad faith claims asserted by these plaintiffs require the existence of insurance coverage. However, the majority determined there was no such coverage.

### A.

### Joseph Nakash's Claims

During the New York litigation, Joseph Nakash filed for Chapter 11 bankruptcy. Consequently, an automatic bankruptcy stay prevented National from obtaining an adverse ruling against him, effectively precluding him from mounting a defense in that case. The majority opinion states that the New York trial court issued an order specifically stating that its decision "could not bind Joseph [Nakash], since the action had been stayed as to him." In spite of this evidence, the majority opinion held that Joseph Nakash is bound by the New York decision. The majority opinion justifies its innocuous ruling by finding "that Joseph could have moved for the New York court to expand the automatic stay to the defendants in that action or to enjoin further litigation." This reasoning is illogical and in direct violation of

the purpose of the automatic stay. There exists no federal bankruptcy law nor rule which requires a debtor to "expand" an automatic stay to obtain the benefits guaranteed by the bankruptcy stay. Thus, the majority decision nullifies the automatic bankruptcy stay.

In view of the majority opinion's lack of understanding of bankruptcy law, I must begin with the basics. As a general matter "a bankruptcy filing automatically stays 'any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate,' and 'any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case[.]' " *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 21, 116 S.Ct. 286, 290, 133 L.Ed.2d 258 (1995).[1] The automatic stay is triggered by the act of filing a bankruptcy petition, not by the entry of an order for relief by the court. *Matter of Eugene L. Pieper, P.C.,* 202 B.R. 294 (Bkrtcy.D.Neb.1996). The stay is effective upon the filing of the petition even though the parties have no notice of its existence. *In re Scott,* 24 B.R. 738 (Bkrtcy.M.D.Ala. 1982). The automatic stay is broad in scope and applies to almost every formal and informal action against the debtor or property of the debtor, except as set forth under 11 U.S.C. § 362(b). 2 Lawrence P. King, et al.,

Collier on Bankruptcy ¶ 362.04, at 362–34 (15th ed.1996). In general, acts taken in violation of the automatic stay are void and without legal effect. *Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940).[2]

Moreover, under 11 U.S.C. 362(d), express authority is given to a party to request the bankruptcy court to lift the automatic stay. See *In re Wilson,* 116 F.3d 87 (3d Cir.1997); *In re Countryside Manor, Inc.,* 188 B.R. 489 (1995). Courts have held that when a party who has not sought such relief from a bankruptcy stay attempts to commence or continue a lawsuit against a debtor, action taken is void. *Paine v. Sealy,* 956 S.W.2d 803 (Tex. App.1997). Additionally, pursuant to 11 U.S.C. § 362(d), express authority is given to the bankruptcy court to annul the automatic stay and thereby retroactively validate actions taken that would otherwise be void. See *In re Soares,* 107 F.3d 969 (1st Cir.1997); *Easley v. Pettibone Michigan Corp.,* 990 F.2d 905 (6th Cir.1993); *In re Albany Partners,* 749 F.2d 670 (11th Cir.1984). Absent such an annulment by the bankruptcy court, however, the mere termination of the stay does not validate actions taken in violation of it. *In re Eden Associates,* 13 B.R. 578 (Bkrtcy.S.D.N.Y.1981). An order terminating the automatic stay permits a party to re-initiate its lawsuit, or start another one, after

---

**1.** The automatic stay provision of 11 U.S.C. § 362(a) provides:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

**2.** *See also In re Krystal Cadillac Oldsmobile GMC Truck, Inc.,* 142 F.3d 631 (3d Cir.1998); *In re TNT Farms,* 226 B.R. 436 (Bkrtcy.D.Idaho 1998); *In re Fitch,* 217 B.R. 286 (Bkrtcy.S.D.Cal.1998); *In re Smith,* 224 B.R. 44 (Bkrtcy.E.D.Mich.1998); *In re Samaniego,* 224 B.R. 154 (Bkrtcy. E.D.Wash.1998); *In re Scott,* 24 B.R. 738 (Bkrtcy.M.D.Ala.1982); *Lorenz v. Beltio, Ltd.,* 963 P.2d 488 (Nev.1998).

the termination order is entered, but does not affect the status of actions taken between the filing of the bankruptcy petition and the entry of the termination order; such actions are void ab initio. *Eastern Refractories Co. Inc. v. Forty Eight Insulations Inc.*, 157 F.3d 169 (2d Cir.1998). The law is clear that only the bankruptcy court has jurisdiction to determine whether a matter is to be exempted from the stay order, a state court does not have jurisdiction to make such a determination. *Hester v. Brewster*, 705 So.2d 793 (La. Ct.App. 5 Cir.1997).

The "basic" principles of bankruptcy law reviewed above illustrate that the majority opinion violates the Congressional intent and prior judicial interpretation of bankruptcy law. The law of bankruptcy is designed to give debtors a "fresh" start. It is not designed to be a trap for a debtor. However, a trap is exactly what was created by the majority's decision. The majority decision defies all tenets of fairness by holding "that Joseph could have moved for the New York court to expand the automatic stay to all the defendants in that action or to enjoin further litigation." The majority opinion erroneously assumes the bankruptcy court would automatically enjoin the New York court proceeding against Joseph Nakash's brothers. *See In re Barney's Inc.*, 200 B.R. 527 (Bkrtcy.S.D.N.Y.1996) (declining to use equitable powers to enjoin state court proceeding against Chapter 11 debtors' nondebtor principals to enforce principals' guarantees where adjudication of the state proceeding would not impose financial hardships on estates or divert principals from their duties); *In re Spiers Graff Spiers*, 190 B.R. 1001 (Bkrtcy. N.D.Ill.1996) (concluding that Chapter 11 debtor-partnership did not establish entitlement to injunction preventing creditor from proceeding in state court action to impose personal liability against debtor's general partners); *In re REPH Acquisition Co.*, 134 B.R. 194 (N.D.Tex.1991) (recognizing that bankruptcy court could not properly use its equitable authority to permanently enjoin lessor from pursuing state court eviction action against nondebtor co-lessee). Assuming, for the sake of argument, that the bankruptcy court would stay the state court proceeding, I have found no bankruptcy law which obligates a debtor to seek a stay against a proceeding involving third-parties. The reason no such law exists is simple. The automatic stay, which the majority opinion has repealed, protects the debtor from extraneous litigation.

Additionally, the majority opinion selectively omits discussion of the legal right and obligation of National to have motioned the bankruptcy court to lift the automatic stay. Herein lies the real problem. Had National wanted to bind Joseph Nakash through the state court proceeding, bankruptcy law provided an express vehicle, under 11 U.S.C. § 362(d), to request the bankruptcy court to lift the stay. *See Constitution Bank v. Tubbs*, 68 F.3d 685 (3d Cir.1995); *Matter of M4 Enterprises, Inc.*, 183 B.R. 981 (Bkrtcy. N.D.Ga.1995); *In re Molitor*, 183 B.R. 547 (Bkrtcy.E.D.Ark.1995). Under the majority opinion, the burden now shifts to debtors to plead with bankruptcy courts to enjoin extraneous litigation. For the reasons that follow, I believe such a requirement is illegal under present federal bankruptcy law.

### 1. Application of the Automatic Stay to Third–Party Litigants

The automatic bankruptcy stay does not extend to separate legal entities such as corporate affiliates, partners in debtor partnerships, or to codefendants in pending litigation. 2 Lawrence P. King, et al., Collier on Bankruptcy ¶ 362.04, at 362–34 & n. 1b (15th ed.1996). The leading case cited by this treatise in favor of not extending the automatic stay to co-defendants is *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541 (5th Cir. 1983). The court in *Wedgeworth* articulated that the purpose of the automatic stay is to protect the debtor. It was correctly reasoned by the court in *Wedgeworth* that the Congressional purpose behind the automatic stay is not "advanced by application of the stay rule to codefendants." *Id.*, 706 F.2d at 545. This principle, that a codefendant is not entitled to the protection of the automatic stay after another defendant files a petition for bankruptcy, is also followed by the Eighth Circuit. *See Croyden Associates v. Alleco, Inc.*, 969 F.2d 675 (8th Cir.1992), cert. denied, 507 U.S. 908, 113 S.Ct. 1251, 122 L.Ed.2d 650 (1993). For example, in *Croy-*

*den* an alleged member of a plaintiff class in a class action lawsuit, sued a public debenture issuer and its successor in interest over liability stemming from a default on the debentures and the fairness of a proposed settlement, after the defendants agreed to a settlement with a committee of other members of the plaintiff class. During the appeal before the Eighth Circuit, one of the defendants filed a petition in bankruptcy. The Eighth Circuit held that the automatic stay applied only to the claims against the debtor and "that the stay is not available to non-bankrupt codefendants, 'even if they are in a similar legal or factual nexus with the debtor.'" *Id.*, 969 F.2d at 677, (quoting *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir.1991), and citing *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir.1984)).

The position taken by *Wedgeworth* and *Croyden*, that codefendants are not protected by the automatic stay, is also supported by analogy to Chapters 12 and 13 of the Bankruptcy Code, which provides in general that a party may not take action against codebtors of a debtor filing for bankruptcy. *See* 11 U.S.C. §§ 1201 & 1301. Since codefendants of a debtor filing bankruptcy under Chapters 12 and 13 are also subject to the automatic stay imposed by 11 U.S.C. § 362(a), the logical conclusion is that Section 362(a) does not include a codefendant stay. If Section 362(a) impliedly protected codebtors, the inclusion of a codebtor stay at Sections 1201 and 1301 would be superfluous. *See Rake v. Wade*, 508 U.S. 464, 471–73, 113 S.Ct. 2187, 2192, 124 L.Ed.2d 424 (1993) ("We generally avoid construing one provision in a statute so as to suspend or supersede another provision"). In the case at hand, Joseph Nakash's codefendants were not "privy" to the automatic stay. Had the codefendants wanted the protection of the stay, they had to motion the bankruptcy court. *See Stephen Inv. Sec., Inc. v. Securities & Exch. Com'n*, 27 F.3d 339, 342 n. 5 (8th Cir.1994); *In re North Star Contracting Corp.*, 125 B.R. 368, 370–71 (S.D.N.Y.1991). However, under the cryptic logic of the majority opinion, Joseph Nakash has been made "privy" to the state court proceeding when, under bankruptcy law, the codefendants were not "privy" to his automatic stay.

### 2. Res judicata and Collateral Estoppel Cannot be Used to Circumvent the Automatic Stay

I come now to the essence of my dispute with the majority opinion. The majority opinion erroneously relied upon the doctrines of res judicata and collateral estoppel to retroactively lift the automatic stay, and thereby bind Joseph Nakash to the New York court decision. Res judicata and collateral estoppel are not novel issues in matters pertaining to bankruptcy proceedings. Unlike the majority opinion, however, other courts have recognized, in similar cases, that res judicata and collateral estoppel have no application to a bankruptcy debtor. In the case of *In re Replogle*, 929 F.2d 836 (1st Cir.1991), the debtor filed bankruptcy in Massachusetts in March of 1988. Thereafter, in September and November of 1988, property of the debtor was foreclosed upon in New York. The First Circuit had little trouble in dispensing with the matter by concluding that "[a]lthough Replogle was a party to the foreclosure, and the bankruptcy judge had notice, the automatic stay issued in the Chapter 13 proceedings, 11 U.S.C. § 362, meant that the New York decision was not res judicata as to Replogle." *Id.*, 929 F.2d at 837 n. 1. *See also Community Investors IX, Ltd. v. Phillips Plastering Co.*, 593 S.W.2d 418 (Tex.Civ.App. 1980) (finding judgment of state court foreclosing lien during pendency of automatic stay was void).

Similarly, in the case of *In re Haines*, 210 B.R. 586 (S.D.Cal.1997), the automatic stay was lifted for specific matters to be litigated between the debtor and his spouse in a divorce proceeding. One issue that the domestic court was not authorized to litigate was the debtor's ability to pay the amount determined to be owed to his spouse by that court. During the bankruptcy proceeding, the debtor's spouse contended that the debtor was collaterally estopped from contesting his ability to pay divorce related debt because the domestic court had determined the issue. The bankruptcy court rejected the collateral estoppel argument and held that "[t]he determination by the family court of [the debt-

or's] ability to pay the amounts it awarded [the spouse] was not within the limited scope of the stay relief .... Actions taken in violation of the automatic stay are void." *Id.,* 210 B.R. at 591 (citing *In re Schwartz,* 954 F.2d 569 (9th Cir.1992)).

The decisions in *Replogle* and *Haines* support my position that neither res judicata nor collateral estoppel may be invoked against a bankruptcy debtor, unless the automatic stay has been lifted specifically to allow extraneous litigation against the debtor for the specific matters with regard to which res judicata or collateral estoppel are raised.[3] In this case, no evidence was adduced showing that the bankruptcy court lifted the automatic stay so that National could litigate against Joseph Nakash. The majority opinion, however, has ruled that the stay did not have to be lifted because National could argue "privity" among codefendants. This is simply wrong according to *Replogle* and *Haines.* Where a debtor is the sole defendant in an extraneous action, the automatic stay cannot be circumvented by the doctrines of res judicata and collateral estoppel. It stands to reason, then, that where codebtors are codefendants against whom an extraneous judgment has been rendered, the automatic stay must similarly prevail over the preclusive doctrines of res judicata and collateral estoppel with regard to a codebtor who has filed for bankruptcy. There can be no privity in a judgment that is void against a debtor. To hold otherwise renders the automatic bankruptcy stay meaningless in all matters involving codefendants. In essence, the majority decision has modified bankruptcy law and rendered the automatic stay meaningless. However, modifying bankruptcy law requires Congressional action, not state court usurpation of power. To permit state courts to do what the majority opinion has done "seriously undercut[s] the orderly process of the law." *Celotex Corporation v. Edwards,* 514 U.S. 300, 313, 115 S.Ct. 1493, 1501, 131 L.Ed.2d 403 (1995).

**3.** As I discussed in the text, under 11 U.S.C. § 362(d) authority is given to the bankruptcy court to terminate, annul, modify or condition the automatic stay. *See, e.g., In re Soares,* 107

## B.

### *Statutory Bad Faith Claim Of Jordache Enterprises, Inc., Ralph Nakash And Avi Nakash*

The majority opinion erroneously remands the statutory bad faith claim of Jordache Enterprises, Inc., Ralph Nakash and Avi Nakash, ruling that the statutory bad faith claim is alive and justiciable because it is "not a claim that rests on substantially prevailing on the underlying contract action." Had the majority carefully reviewed the specific provisions of West Virginia law upon which these plaintiffs rely in asserting their bad faith claim, I believe the majority would have affirmed summary judgment on that claim.

According to the majority, Jordache Enterprises, Inc., Ralph Nakash and Avi Nakash claim that National committed bad faith pursuant to W.Va.Code §§ 33–11–4(9)(b), (c), (d), (e) and (f), which read:

(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

(c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

(e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

(f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

A fair reading of (b), (c), (d) and (f) requires any reasonable person to conclude that "coverage" must exist for them to be viable. However, the majority opinion determined that coverage did not exist. Therefore, provisions (b), (c), (d) and (f) are not justiciable.

F.3d 969 (1st Cir.1997); *Easley v. Pettibone Michigan Corp.,* 990 F.2d 905 (6th Cir.1993); *In re Albany Partners,* 749 F.2d 670 (11th Cir.1984).

Summary judgment was appropriate as to those provisions.

As to provision (e), two types of claims exist: (1) failing to affirm coverage timely and (2) failing to deny coverage timely. Nothing in the majority opinion, nor the record, reveal a material issue of dispute as to whether National failed to deny coverage within a reasonable time. It is clear from the record and the majority opinion that Jordache Enterprises, Inc., Ralph Nakash and Avi Nakash were asserting that part of provision (e) which addresses failing to "affirm" coverage within a reasonable time. On this issue, the majority opinion concluded that coverage did not exist. Thus, summary judgment should have been affirmed.